Floyd S. PHILLIPS, Administrator of the Estate of Edward M. Phillips, deceased, Appellant (Plaintiff Below),

v.

UNITED ENGINEERS & CONSTRUCTORS, INC., Hoosier Energy Rural Electric Cooperative, Inc., Riley-Stoker Corporation and Shurtleff & Andrews, Appellees (Defendants Below),

and

Plasteel Products Corporation, Appellee (Third Party Defendant Below).

No. 1–585A122.

Court of Appeals of Indiana, First District.

Dec. 9, 1986.

B. Michael McCormick, McCormick Law Firm, Terre Haute, Hann, Mitchell & Mitchell, Washington, Pa., for appellant.

J. David Huber, Zoercher & Huber, Tell City, for appellees.

ROBERTSON, Presiding Judge.

Appellant-plaintiff Floyd S. Phillips, administrator of the estate of Edward M. Phillips [1], deceased, appeals from the granting of summary judgment in favor of United Engineers & Contractors, Inc. (United) and Hoosier Energy Rural Electric Cooperative, Inc. (Hoosier Energy).

We affirm the order of summary judgment in favor of Hoosier Energy and reverse the order of summary judgment in favor of United.

The facts viewed in a light most favorable to Phillips disclose that Decedent was installing sheet metal siding at the Merom Electric Generating Station then under construction. On November 27, 1979, Decedent and a co-worker, Donald Lawrence, were carrying pieces of metal flashing across a catwalk when Decedent fell backwards from the unfinished east end of the catwalk, plunging 119 feet to his death.

The contractual obligations undertaken by the parties at the Merom Generating Station were as follows: Hoosier Energy engaged United to provide all engineering services for the project, to coordinate the work among the contractors, and to inspect materials and equipment to assure their conformance with the plans and specifications. Hoosier Energy also contracted with approximately 109 contractors for various other services. The Decedent's employer, Plasteel Products (Plasteel), agreed to furnish and install sheet metal siding under its contract with Hoosier Energy. Riley-Stoker Corporation (Riley-Stoker) constructed a boiler for Hoosier Energy in the area from which Decedent fell. Shurtleff & Andrews, under a sub-contract with Riley-Stoker, erected structural steel around the boiler and apparently, together with Riley-Stoker, built the catwalk from which Decedent fell. United did not contract with any of the aforementioned contractors.

The catwalk from which Decedent fell was unfinished at the east end where a set of steps was to be placed later. Moreover, the end of the catwalk was not safeguarded by a cable or other barricade. Although Decedent had been wearing a safety belt as he worked, he had not "tied off" to a piece of steel when the accident occurred.

Phillips, as administrator of Decedent's estate, brought a wrongful death suit against Hoosier Energy, United, Riley-Stoker, and Shurtleff & Andrews. Hoosier Energy filed a third party complaint against Plasteel. The trial court granted motions for summary judgment in favor of Hoosier Energy and United, and Phillips appeals.

We must decide the following issues:

I. Whether the trial court erred in granting summary judgment in favor of Hoosier Energy because it owed no duty to Phillips?

II. Whether the trial court erred in granting summary judgment in favor of United because it owed no duty to Phillips?

---

1. Hereinafter, we will refer to Floyd S. Phillips as Phillips; Edward M. Phillips will be referred to as Decedent.

III. Whether Phillips was contributorily negligent or incurred the risk as a matter of law?

IV. Whether the trial court abused its discretion in entering an order granting Hoosier Energy an enlargement of time to answer discovery until thirty days after the court's ruling on the motions for summary judgment?

V. Whether the trial court erred by refusing to consider the affidavit of Paul Perry before ruling on the motion for summary judgment?

Before proceeding to address these issues, we note that our standard of review from an order granting summary judgment is the same as that in the trial court. *Matter of Estate of Belanger*, (1982) Ind.App., 433 N.E.2d 39, 42, *trans. denied*. The trial court should grant summary judgment only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits and testimony, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Indiana Rules of Trial Procedure, Trial Rule 56(C); *Moll v. South Central Solar Systems, Inc.*, (1981) Ind.App., 419 N.E.2d 154, 159. In determining whether a genuine issue of material fact exists, we accept as true all facts set forth by the non-moving party and resolve all doubts against the movant. *Barnd v. Borst*, (1982) Ind.App., 431 N.E.2d 161, 165; *English Coal v. Durcholz*, (1981) Ind.App., 422 N.E.2d 302, 303. Only where there is no dispute as to the material facts or inferences to be drawn therefrom, and the moving party is entitled to summary judgment as a matter of law, may the court grant such a motion.

ISSUE I   Duty Owed by Hoosier Energy

In its motion for summary judgment, Hoosier Energy maintained that it owed no duty to Decedent and was therefore entitled to summary judgment. Phillips countered that Hoosier Energy retained such a degree of control over the activities of the contractors on the project that it owed a duty to Decedent as a matter of law, relying on *Prest-O-Lite v. Skeel*, (1914) 182 Ind. 593, 106 N.E. 365. In *Prest-O-Lite*, our supreme court set out the general rule that an owner cannot be held liable for injuries to employees of contractors. The contract in *Prest-O-Lite* provided that the owner, through a person called an inspector, would have the authority to examine the materials furnished for the project and to reject any that did not conform to specifications. It was held that although the authority of the inspector gave him the power to determine that a standard was met, the means and methods of attaining those standards were not subject to his control.

Phillips does not point to any genuine issue of material fact which would preclude summary judgment in favor of Hoosier Energy, nor has he convinced us that the undisputed facts remove the instant case from the operation of the general rule in *Prest-O-Lite*, 106 N.E. 365. Rather, it is apparent that Hoosier Energy did not retain any control as to the means and methods by which the contractors engaged in their work.

As evidence that Riley-Stoker and Plasteel were servants, Phillips points to various contract provisions by which Phillips contends Hoosier Energy reserved the right to control or govern the contractors. Upon examination of the contracts it is apparent that Hoosier Energy required nothing more than that materials furnished and work performed meet the plans and specifications, and that contractors conform to federal, state and local safety regulations. If control is said to be operative when the right of some supervision is retained, it must be more than a general right which is usually reserved to those who hire persons to perform work. *Cummings v. Hoosier Marine Properties, Inc.*, (1977) 173 Ind.App. 372, 363 N.E.2d 1266, *trans. denied*. Moreover, Riley-Stoker and Plasteel were not rendered servants of Hoosier Energy because the work was to be done to the satisfaction of United representing Hoosier Energy. *See id.*

Phillips also presents no evidence that Decedent himself was under the control or direction of Hoosier Energy in performing his assigned duties. Absent any control by Hoosier Energy over the manner or means by which the independent contractors or Decedent performed their duties, we must conclude that Hoosier Energy could not have owed Decedent any duty predicated upon a right to control found in the contract.

Phillips further contends that Hoosier Energy owed a duty under one of the five exceptions to the general rule of *Prest-O-Lite:* when the party is charged by law or contract with a specific duty: here, to provide for Decedent's safety. *See Jones v. Indianapolis Power and Light Co.,* (1973) 158 Ind.App. 676, 304 N.E.2d 337. The law does not impose on Hoosier Energy any duty with respect to Decedent. The regulations of the Indiana Department of Labor relating to the construction industry and found at 610 IAC 5–1–1 *et seq.* have been held to impose a specific duty on prime contractors, pursuant to the express language of the definitional provisions:

(C)(6) The prime contractor of a project shall be deemed as being responsible for compliance with the provisions of this Code. In the event there is more than one prime contractor on a project, each shall be responsible for compliance of this Code [610 IAC 5–1] within the area of his jurisdiction.

(8) The term "prime contractor" shall be interpreted as being the person, firm or corporation that is responsible to the awarding unit for direct or indirect completion of all or part of the over-all project.

*See, Katapodis v. Koppers Co., Inc.,* (7th Cir.1985) 770 F.2d 655; *Maynard v. Flanagin, Bros.,* (1985) Ind.App., 484 N.E.2d 71; *Jones v. IPALCO,* 304 N.E.2d 337.

■ Phillips has utterly failed to demonstrate in what way Hoosier Energy could be deemed a prime contractor under the

regulations. Because Hoosier Energy is the owner/contractee and not a prime contractor, it is not charged with a specific duty to provide for safety under the Indiana Administrative Code. *Jones, id.; Katapodis,* 770 F.2d 655.

■ It is clear that Hoosier Energy did not contract for the specific duty to provide for Decedent's safety at the work site. Hoosier Energy and United's contract makes no mention of safety, the parties having limited their agreement to general provisions regarding supervision of construction.[2] The contracts between Hoosier Energy and its various contractors merely require each contractor to conduct its operations safely and to observe applicable laws and regulations respecting safety. We have refused to extend a specific duty to an owner/contractee where the contract prescribed safety rules and required the contractor to observe those rules or any laws relating to safety. *Jones v. IPALCO, supra; Cummings v. Hoosier Marine Properties, supra; Perry v. Northern Indiana Public Service Co.,* (1982) Ind.App., 433 N.E.2d 44. *trans. denied.*

Finally, Phillips has waived any error with respect to his theory that' Hoosier Energy's selection of United as construction manager was negligent. In order for error to be preserved, it must be stated with specificity in the motion to correct errors. *Prine v. State,* (1983) Ind., 457 N.E.2d 217. Having failed to address this contention in his motion to correct errors, it is waived.

ISSUE II Duty Owed by United

We hold that the trial court erred in granting summary judgment in favor of United. To reiterate, United was the construction manager at the Merom site. Phillips argues that United assumed a duty with respect to safety at the jobsite. We agree that the testimony contained in the depositions and affidavits is sufficient to present to a jury the question whether

---

**2.** Phillips also contends that United was Hoosier Energy's agent. At least with respect to safety, Phillips has not demonstrated how United was Hoosier Energy's agent.

United assumed a duty, and the extent of that duty.

■ A duty of care may arise where one party assumes such a duty, either gratuitously or voluntarily. *Clyde E. Williams and Associates, Inc. v. Boatman,* (1978) 176 Ind.App. 430, 375 N.E.2d 1138, *trans. denied; Perry v. Northern Indiana Public Service,* 433 N.E.2d 44; *Plan-Tec, Inc. v. Wiggins,* (1983) Ind.App., 443 N.E.2d 1212. The assumption of a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person. *Clyde E. Williams,* 375 N.E.2d 1138; *Plan-Tec,* 443 N.E.2d 1212. Failure to act in a reasonable manner will give rise to an action for negligence. *Id.* Whether a party has assumed a duty and the extent of that duty, if any, are questions for the trier of fact. *Perry,* 433 N.E.2d at 50.

The facts which were found to be sufficient to present a jury question in *Plan-Tec* are nearly identical with those presented here. In *Plan-Tec,* Wiggins suffered an injury when the scaffold from which he was working collapsed and fell. Wiggins was employed by Terstep, Inc., one of several subcontractors engaged in the construction, and owner and operator of the scaffold used exclusively for Terstep's employees. Plan-Tec acted as construction managers, coordinating the entire project. Plan-Tec had not contractually agreed to provide for on-the-job safety. *Id.* at 1219. Nevertheless, Plan-Tec appointed a safety director, initiated weekly safety meetings, and directed the contractors to observe certain safety precautions. *Id.* at 1220. In addition, the safety director inspected the scaffolding each morning.

In the instant case, most of the evidence regarding an undertaking by United was contained in the deposition testimony of Delbert Puckett, United's "safety coordinator." Puckett averred that he "gave" safety meetings bi-weekly for superintendents of the contractors at the jobsite. He also conducted tours of the jobsite during which he noted safety violations or unsafe practices, and thereupon wrote a speed letter advising the violator to remedy the problem. Puckett admitted that a portion of his responsibility was to "govern the safety of contractors."

■ United directs our attention to several facts which militate against finding that it assumed a duty, particularly as to Decedent. Most significant in that regard is the fact that Puckett apparently had never inspected the catwalk in question, and he had no occasion to notice its condition from the ground. Further, Puckett's duties were about equally divided between safety and security; Puckett had never attempted to enforce safety violations that he had cited, and he had never followed up with contractors on any safety violations which were the subject of the speed letters. This mitigating evidence will be properly admissible to determine the extent of a duty, if any, which a jury may decide United assumed for overall safety aspects of the project. *See Plan-Tec., id.* Nevertheless, we hold that the evidence is sufficient to present to a jury the question whether United had assumed a duty for the overall safety aspects of the project. Therefore, we reverse the trial court's granting of summary judgment.

ISSUE III   Contributory Negligence and Assumption of Risk

Hoosier Energy and United argue alternatively that summary judgment in their favor was proper because Decedent was contributorily negligent and/or assumed the risk as a matter of law. We hold that the trial court could not properly have concluded that Decedent had been contributorily negligent and/or had incurred the risk as a matter of law.

■ Contributory negligence is generally a question of fact for the jury where the facts are such as to be subject to more than one reasonable inference. *Hundt v. La-Crosse Grain Co., Inc.,* (1983) Ind., 446 N.E.2d 327. Contributory negligence is conduct on the part of the plaintiff which falls below the standard to which he should conform for his own protection and safety.

*Id.* The trier of fact must determine whether the plaintiff exercised that degree of care that an ordinary man would exercise in like or similar circumstances. *Id.*

■ It is readily apparent that the question of Decedent's negligence should be determined by the trier of fact. Hoosier Energy and United premise Decedent's negligence on his failure to take precautions while carrying metal flashing across a catwalk which was unguarded at one end. However, viewing the facts in a light most favorable to Phillips, we cannot say as a matter of law that Decedent's conduct fell below the standard to which a reasonable man would have conformed in like or similar circumstances.

Co-worker Lawrence described in his deposition the procedure he and Decedent used when carrying metal sheets of flashing from a deck to the east end of the catwalk to be hoisted to the roof. The catwalk's floor, made of black steel grating, had three large pieces missing, resulting in holes large enough for a man to fall through. In addition to the missing grating, the lack of handrails along the catwalk prompted Lawrence and Decedent to complain to their shop steward and to Plasteel. Decedent never complained of or mentioned to Lawrence the catwalk's unfinished end. Lawrence detailed how, on the fatal second trip to the catwalk, he and Decedent had carried two pieces of flashing, weighing 30–35 pounds, along the catwalk. Decedent walked sideways ahead of Lawrence. As the two came to the missing grating, they had to jump to get over the holes. Lawrence had to keep his head down most of the time in order to avoid falling through the holes. As he glanced up after clearing the second hole, he saw Decedent falling backwards off the end of the catwalk. Lawrence believed that Decedent had just cleared the third hole when he fell. It was Lawrence's opinion that Decedent had stumbled before falling.

Lawrence regarded Decedent as a safety conscious worker who did not take risks.

At the time of the accident, Decedent had been wearing his hard hat and safety belt, but like Lawrence, had not "tied off" by attaching a safety line to his belt. Lawrence reported that tying off as one walked along carrying flashing would have been impossible, or at least impractical, and that it would not have been unusual for an ironworker to neglect to tie off when he walked up and down a catwalk.

We note that the evidence is susceptible to more than one inference regarding why Decedent fell from the catwalk. The question of whether any carelessness on Decedent's part was the proximate cause of Decedent's death is still open to determination, as we view the evidence most favorable to Phillips. We believe the evidence here raises more than one inference, precluding summary judgment.

Likewise, whether Decedent voluntarily accepted a risk or danger which he knew or appreciated may not be resolved here as a matter of law. The jury should have the task of weighing Lawrence's testimony that Decedent never mentioned the unguarded condition at the end of the catwalk even though he complained about other dangers with respect to the catwalk, with Lawrence's opinion that the condition of the catwalk was apparent. Summary judgment premised upon Decedent's contributory negligence or assumption of risk was error.

ISSUE IV Motion for Enlargement of Time to Comply With Discovery

On August 1, 1984, Hoosier Energy was granted an enlargement of time to answer Phillips' discovery request, to a date thirty days after the court ruled on defendants' motions for summary judgment. Phillips recalls that prior to the filing of Hoosier Energy's motion for enlargement of time, there was a telephone conversation between Phillips, Hoosier Energy, and the trial judge in which Phillips agreed to the enlargement of time. However, Phillips claims that he had not agreed to an enlargement of time extending the deadline

until after a ruling on the motions for summary judgment.

■ Even accepting Phillips' version of the events as true, he clearly waived any assignment of error by failing to move for a continuance of the August 31st hearing on the motion for summary judgment, permitted under Ind. Rules of Procedure, Trial Rule 56(F). A party who neglects to avail himself of a valid objection to a proceeding and stands by or participates therein until an adverse result is reached must bear the consequences. *Kahf v. Charleston South Apartments,* (1984) Ind.App., 461 N.E.2d 723 *trans. denied; Wisconics Engineering, Inc. v. Fisher,* (1984) Ind.App., 466 N.E.2d 745 *trans. denied.*

ISSUE V   Affidavit of Paul Perry

Phillips' last assignment of error is the trial court's failure to consider the affidavit of Paul Perry, former superintendent for Plasteel at the Merom project. The affidavit was submitted by Phillips after the hearing on the motions for summary judgment. The trial court granted the defendant's motion to strike the affidavit and also denied Phillips' motion to submit the affidavit as newly discovered evidence.

We need not decide whether it was an abuse of discretion for the trial court to refuse to consider Perry's affidavit, in light of the fact that we have reversed the order granting summary judgment in favor of United. The averments in the affidavit relate to the question of United's involvement on the Merom project. Moreover, Perry's averment that Plasteel's contract with Hoosier Energy did not require Plasteel to install grates and walkways is a fact readily discoverable by reference to the contract, and would not have a bearing on the disposition of Hoosier Energy's claim here.

Affirmed in part and reversed in part.

NEAL, J., concurs.

RATLIFF, J., concurs except to issue IV; concurs in result to issue IV.