Harold CARIE and Al Harper, Appellants
(Plaintiffs Below),

v.

PSI ENERGY, INC., Appellee
(Defendant Below).

No. 83S01–9811–CV–695.

Supreme Court of Indiana.

Sept. 3, 1999.

Stephen L. Williams, Terre Haute, Indiana, Paul B. Ledford, Vincennes, Indiana, Attorneys for Appellants.

William W. Drummy, John Christopher Wall, Terre Haute, Indiana, Eric M. Cavanaugh, Plainfield, Indiana, Attorneys for Appellee.

SHEPARD, Chief Justice.

Harold Carie and Al Harper, employees of an independent contractor, each sued PSI Energy, Inc., for injuries sustained while performing maintenance on PSI's equipment. The trial court granted summary judgment in favor of PSI. The Court of Appeals reversed, holding that PSI might be liable under the "due precaution" exception. *Carie v. PSI Energy, Inc.*, 694 N.E.2d 729 (Ind.Ct. App.1998). We now grant transfer and affirm the trial court.

### Facts and Procedural Posture

The relevant facts in this case are undisputed. PSI's Cayuga Generating Station produces electricity using pulverized coal. After the coal is pulverized, it is moved into exhausters. An exhauster is a fan-like apparatus containing eight blades and resembling a paddle wheel. The exhausters distribute the coal to the boilers which generate the electricity.

At one time, PSI performed its own maintenance at the Cayuga plant. PSI employees developed a fixture to facilitate maintenance on the exhausters. The fixture enabled PSI employees to remove the 5,200–pound front cover of an exhauster. The removal process involved bolting the fixture to the cover, unbolting the cover from the exhauster, securing a forklift to the fixture, and backing the forklift away from the exhauster with the fixture and the cover. As the fixture was not designed to be self-supporting, the forklift would then generally move the cover and fixture away from the exhauster to be tied off to an overhead beam. Until the fixture and cover were tied off to another structure, the forklift was required to support them.

In 1979, PSI began to employ independent contractors to do mill maintenance. In August of 1989, PSI contracted with Blount, Inc. for maintenance at the Cayuga plant.[1] Timothy Weiss was the Blount boilermaker foreman in charge of the Cayuga station maintenance. From the time Blount hired him in 1986, Weiss had performed maintenance work at several PSI plants, including repairs on exhausters. A PSI employee taught Weiss how to remove the exhauster covers using the jig fixture and a forklift. By September of 1991, Weiss had performed the removal procedure on exhauster covers several times.

On September 5, 1991, Weiss and his crew were repairing one of the exhausters at the Cayuga plant. Plaintiffs Carie and Harper were part of that crew. Weiss testified that he knew, and informed his crew members, that the fixture and exhauster cover were not self-supporting. (Supp. R. at 433–34.) Beginning the repairs, a Blount crew member named Kenneth Richmond used a forklift owned by PSI to remove the exhauster cover and attached fixture. Richmond later testified that he did not know the fixture and exhauster cover were not self-supporting. (R. at 639.) Richmond backed the forklift up four or five feet when it stalled. As was customary, when the forklift stalled, Weiss left the area to get a PSI employee to fix the machine. Before leaving, Weiss told his crew members "to leave it alone, don't touch it, I'll go get—I'll go tell somebody to fix it." (Supp. R. at 440.)

While Weiss was away from the area, PSI mechanics came to the scene and examined the forklift. The mechanics instructed Richmond how to operate the forklift without stalling it. Richmond then restarted the forklift and backed up another eight to ten feet. He lowered the fixture and cover to the floor, leaving the hooks of the forklift inserted in the fixture. While Richmond was waiting for Weiss to return, another forklift

---

1. The service contract provided that Blount "shall have the obligation to provide a safe working environment for its employees and ... shall maintain its own safety standards. [Blount] shall ensure that its employees follow safe work practices." (R. at 30.) The contract also provided that Blount "shall comply with all applicable laws, ordinances, rules and regulations, including provisions of the Occupational Safety and Health Act .... [and] shall abide by any and all rules ... pertaining to ... the handling of Equipment, materials or any other part of the Work." (*Id.*)

approached the area and needed to pass. Richmond's forklift, the cover, and the fixture were blocking his way. Richmond removed the forklift hooks and backed up to let the other forklift pass. Left unsupported, the fixture and the attached exhauster cover fell, seriously injuring Carie and Harper.

Carie and Harper filed separate complaints against PSI alleging negligence. The trial court consolidated the two cases. PSI moved for summary judgment, which the trial court granted based on the general rule that a person who hires an independent contractor is not liable for the independent contractor's negligence. Carie and Harper appealed. Applying an exception to the general rule of non-liability, the Court of Appeals reversed, with Judge Friedlander dissenting, *Carie*, 694 N.E.2d at 737–38. In their petition to transfer, PSI presents one dispositive issue: whether the "due precaution" exception to the general rule of non-liability applies to their case.

### Summary Judgment Standard of Review

■ A grant of summary judgment requires that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. Ind.Trial Rule 56(C); *Ayres v. Indian Heights Volunteer Fire Dep't., Inc.*, 493 N.E.2d 1229 (Ind. 1986). On appeal from summary judgment, the reviewing court faces the same issues that were before the trial court, and analyzes them in the same way. *Ambassador Fin. Services, Inc. v. Indiana Nat'l Bank*, 605 N.E.2d 746, (Ind.1992). "We view the pleadings, depositions, answers to interrogatories and affidavits in the light most favorable to the non-moving party." *Havens v. Ritchey*, 582 N.E.2d 792, 795 (Ind.1991). Although the nonmovant has the burden of demonstrating the grant of summary judgment was erroneous, we carefully assess the trial court's decision to ensure that the nonmovant was not improperly denied his day in court. *Colonial Penn Ins. Co. v. Guzorek*, 690 N.E.2d 664 (Ind.1997).

### Analysis

■ The question is whether PSI owed Blount's employees a duty of care. "[T]he long-standing general rule has been that a principal is not liable for the negligence of an independent contractor." *Bagley v. Insight Communications Co.*, 658 N.E.2d 584, 586 (Ind.1995) (citing *Prest–O–Lite Co. v. Skeel*, 182 Ind. 593, 597, 106 N.E. 365, 367 (1914); *City of Logansport v. Dick*, 70 Ind. 65, 78 (1880)). Indiana courts, however, have recognized five exceptions to the general rule. *Bagley*, 658 N.E.2d at 586. The exceptions are: (1) where the contract requires the performance of intrinsically dangerous work; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal. *Id.* In *Bagley*, we explained the rationale for these exceptions like this:

> The duties associated with Indiana's five exceptions are considered non-delegable, and an employer will be liable for the negligence of the contractor, because the responsibilities are deemed "so important to the community" that the employer should not be permitted to transfer these duties to another.... The exceptions encourage the employer of the contractor to participate in the control of work covered by the exceptions in order to minimize the risk of resulting injuries.

*Bagley*, 658 N.E.2d at 587–88 (citations omitted). The exceptions reflect the notion that, in certain circumstances, "the employer is in the best position to identify, minimize, and administer the risks involved in the contractor's activities." 7 Am.Jur. Proof of Facts 3d § 1 at 483 (1990).

The parties agree that the relationship between PSI and Blount was one of contractee and independent contractor, respectively. Thus, unless one of the exceptions applies, the general rule would dictate that PSI did not owe Blount or its employees a duty of care.

■ The two exceptions potentially applicable include where the contract requires the performance of intrinsically dangerous work and where the act to be performed will probably cause injury to others unless due pre-

caution is taken. The Court of Appeals determined that the exception for intrinsically dangerous work was inapplicable here. That conclusion is not challenged on transfer.[2] Our inquiry thus focusses solely on the applicability of exception four: where the act to be performed will probably cause injury to others unless due precaution is taken.

### Exception Four: Probability of Injury Absent Due Precaution

■ As the Court of Appeals majority noted, the due precaution exception [3] makes an employer "liable for the negligence of an independent contractor 'where the act to be performed will probably cause injury to others unless due precaution is taken.'" *Carie,* 694 N.E.2d at 735 (quoting *Bagley,* 658 N.E.2d at 586).[4] This Court explained the exception in *Bagley:*

> The essence of this exception is the foreseeability of the peculiar risk involved in the work and of the need for special precautions. The exception applies where, at

the time of the making of the contract, a principal should have foreseen that the performance of the work or the conditions under which it was to be performed would, absent precautionary measures, probably cause injury.

> Application of this fourth exception to the plaintiff's claim thus requires an examination of whether, at the time [a party] was employed as an independent contractor, there existed a peculiar risk which was reasonably foreseeable and which recognizably called for precautionary measures.

658 N.E.2d at 588 (citations omitted); *see also Cummings v. Hoosier Marine Properties, Inc.,* 173 Ind.App. 372, 387, 363 N.E.2d 1266, 1275 (1977) ("an action would fail absent a showing by the plaintiff that in view of the nature of the work and the conditions under which it was to be executed, the defendant should have foreseen that the actual catastrophe which occurred was likely to happen"). Rather than focussing on the permutations of "peculiar," [5] we believe the

2. On this point, we summarily affirm the decision of the Court of Appeals. Ind.Appellate Rule 11(B)(3). The court gave three reasons for its conclusion that the exception did not apply: (1) the contract did not require the performance of intrinsically dangerous work; (2) the accident was caused by the collateral negligence of others; and (3) proper precautions were not taken during the cover removal process. *Carie,* 694 N.E.2d at 734.

3. The due precaution exception is sometimes referred to as the "peculiar risk" doctrine. *See, e.g.,* 7 Am.Jur. Proof of Facts § 4 at 489 (1990); 14 Am.Jur. Pleading and Practice Forms, Independent Contractors § 62 at 571 (1996).

4. The due precaution exception was memorialized in Sections 413 and 416 of the Restatement (Second) of Torts. Section 413 provides:

> One who employs an independent contractor to do work which the employer should recognize as likely to create, during its progress, a peculiar unreasonable risk of physical harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the absence of such precautions if the employer
> (a) fails to provide in the contract that the contractor shall take such precautions, or
> (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions.

Section 416 provides:

> One who employs an independent contractor to do work which the employer should recog-

nize as likely to create during its progress a peculiar risk of harm to others unless special precautions are taken, is subject to liability for physical harm caused to them by the failure of the contractor to exercise reasonable care to take such precautions, even though the employer has provided for such precautions in the contract or otherwise.

Section 413 differs from section 416 only to the extent it imposes liability on an employer without controlling provisions in the contract. 7 Am.Jur. Proof of Fact 3d § 2 at 485. One commentator explained the Restatement formulation as:

> The peculiar risk doctrine codified in Restatement Sections 413 and 416 ... is a circumstance-specific exception to the general rule of non-liability, and depends on the fact that the employer knew or had special reason to know that, absent special precautions, an independent contractor's activities were likely to create a particular risk to others in the specific circumstances under which the work is normally done.

*Id.* § 4 at 489.

5. Some cases dealing with the due precaution exception involve disputes over whether the work to be performed created a "peculiar" risk. *See, e.g., Red Roof Inns, Inc. v. Purvis,* 691 N.E.2d 1341, 1344–46 (Ind.Ct.App.1998) (discussing other jurisdictions' cases defining "peculiar risk"), *trans. denied,* 706 N.E.2d 166 (Ind.1998); *see also* 7 Am.Jur.3d Proof of Facts §§ 6, 7 at 492–96 (discussing the definition of "peculiar risk" with case citations, and listing examples of occur-

proper inquiry in this case rests on foreseeability. "Foreseeability is an essential element" in the due precaution exception. *Denneau v. Indiana & Michigan Elec. Co.,* 150 Ind.App. 615, 621, 277 N.E.2d 8, 12 (1971).

The policy underlying the foreseeability requirement has been explained:

It is apparent that virtual abrogation of the general doctrine of an employer's non-liability for acts of an independent contractor of the latter's servants would result if the law were to predicate, under all circumstances, the existence of an absolute duty on the employer's part to guard against all accidents probable as well as improbable, that might happen, to the damage of third persons, while stipulated work is being performed by an independent contractor. If, therefore, recovery is sought on the ground that an employer should have adopted certain precautionary measures for the purpose of preventing the injury complained of, *the action must fail unless the plaintiff can at least show that in view of the nature of the work and the conditions under which it was to be executed, the defendant should have foreseen that the actual catastrophe which occurred was likely to happen* if those precautionary measures were omitted.

*Jones v. Indianapolis Power and Light Co.,* 158 Ind.App. 676, 691, 304 N.E.2d 337, 346 (1973) (quoting 41 Am.Jur.2d Independent Contractors § 35) (now § 31 at 430 (1995)) (emphasis supplied in *Jones*). With these standards in mind, and with the relevant facts undisputed, the inquiry here becomes whether, as a matter of law, PSI should have foreseen that the performance of maintenance work on the exhausters would probably result in this type of incident unless due precaution was taken.

■ That determination hinges on the degree of factual specificity which the law

should require the employer to foresee. The Court of Appeals majority decided that the due precaution exception applied because PSI should have foreseen the general risk which caused Carie and Harper's injuries, saying:

The question ... is whether the use of the non-self-supporting fixture to remove an exhauster cover would make injury "likely to happen" unless precautionary measures were taken. The answer is yes.... [I]t was foreseeable to PSI at the time of contracting that if the fixture was left unsupported, it would fall and likely cause injury.

*Carie,* 694 N.E.2d at 736–37. In dissent, Judge Friedlander asserted that the exception should apply only if there was some relatively more peculiar or special foreseeable risk, phrasing the dispositive issue as:

At the time of the signing of the contract, could PSI have foreseen that a forklift would fail while it was supporting a jig and front cover, and that a Blount employee would move the forklift, leaving the front cover unsupported, which would then fall and injure someone? ... [T]his question must be answered in the negative.

*Id.* at 739. We agree with Judge Friedlander that "the danger that the contractee must foresee in order to fit within the fourth exception must be substantially similar to the accident that produced the complained-of injury." *Id.* at 737.

This policy was apparent when the *Jones* court recited the facts of the incident with particular specificity when affirming the summary judgment in favor of the defendant:

There was no evidence that, at the time [the employer] contracted with [the independent contractor], [the employer]· could foresee or should have foreseen that the limit control switch atop a man and materials hoist operated by an independent con-

---

rences held to constitute a "peculiar risk"). The court in *Red Roof Inns* recognized that a peculiar risk "evolves from the nature of the work and the conditions under which it is to be performed; however, foreseeability is an essential element of the ... exception...." 691 N.E.2d at 1345. In the present case, the court correctly focussed its inquiry on the foreseeability of the risk rather than its peculiarity:

We emphasize that the determination to be made is not whether the general maintenance services Blount agreed to perform involved a peculiar risk. The question, rather, is whether the use of the non-self-supporting fixture to remove an exhauster cover would make injury "likely to happen" unless precautionary measures were taken.

*Carie,* 694 N.E.2d at 736.

tractor for exclusive use of its employees would become clogged with ice and snow causing the hoist to stick—and that employees of such independent contractor would undertake to manipulate the hoist circuitry so as to cause death or injury. *Jones,* 158 Ind.App. at 690–91, 304 N.E.2d at 346. We implicitly required a similar level of factual specificity in *Bagley.* In that case, Bagley, an employee of an independent contractor, "was injured as he was hammering a rod into the ground near the ladder on which [the independent contractor] was working. The ladder slipped on snow and ice, and [the independent contractor] landed on Bagley, driving Bagley's head down onto the protruding rod." *Bagley,* 658 N.E.2d at 588. Upholding summary judgment in favor of the defendants, the Court stated:

> At the time the contracts were made, the delegated work did not present the peculiar probability that an injury such as Bagley's would result unless precautionary measures were taken, and the employers could not have been expected to foresee the sort of injury which actually occurred.

*Id.* In the present case, Judge Friedlander was correct to call for a more precise factual congruence between that which was foreseeable and that which ultimately occurred.[6] We are satisfied that PSI could not have foreseen the sequence of events leading to plaintiffs' injuries when it hired Blount to perform maintenance at Cayuga, and as such, the due precaution exception does not apply. *Cf. Red Roof Inns,* 691 N.E.2d at 1346 ("[W]e are not persuaded that the nature of the work and the conditions under which it was performed were such that, at the time of contracting, a reasonable employer should have foreseen that injury ... was likely to occur."). Accordingly, the general rule of non-liability for the torts of independent contractors applies and the plaintiffs' claims must fail.

**6.** Having said that, we observe that it would be a mistake to push Judge Friedlander's point too far. The general rule of non-liability rests in part on the custom of hiring expert independent contractors for tricky jobs in which they may be more expert than the contractee. Still, the contractee must be held accountable on those occasions when it knows of special risks that might

### Conclusion

We vacate the opinion of the Court of Appeals and affirm the trial court's entry of summary judgment.

DICKSON, SULLIVAN, SELBY, and BOEHM, JJ., concur.

escape its contractor. The resolution of such questions, namely, "whether one of the five exceptions to the general rule of non-liability exists in a particular case can be a legal question resolved through summary judgment, depending on the facts before the trial court." *Bagley,* 658 N.E.2d at 589 (Shepard, C.J., concurring).