The **HUNT CONSTRUCTION GROUP, INC.,** and **Mezzetta Construction, Inc., Appellants–Defendants,**

v.

**Shannon D. GARRETT, Appellee–Plaintiff.**

No. 49A02–1001–CT–86.

Court of Appeals of Indiana.

Dec. 14, 2010.

Rehearing Denied Feb. 17, 2011.

---

Steven E. Springer, Mark D. Gerth, Crystal G. Rowe, Michael Wroblewski, Kightlinger & Gray, LLP, Indianapolis, IN, Attorneys for Appellants.

W.F. Conour, Timothy F. Devereux, Jeffrey A. Hammond, Conour Devereux Hammond, Indianapolis, IN, Attorneys for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

The Hunt Construction Group, Inc., and Mezzetta Construction, Inc., (collectively, "Hunt Construction")[1] appeal the trial court's denial of their motion for summary judgment and the trial court's grant of partial summary judgment to Shannon D.

---

1. According to Hunt Construction Group, Inc., "Mezzetta Construction, Inc. performed functions with Hunt on the jobsite" and, for purposes of this appeal, "all references to 'Hunt' include Mezzetta." Appellant's Br. p.2 n.1.

Garrett. We affirm in part and reverse in part.

## Issues

Hunt Construction raises three issues, which we consolidate and restate as:

I.  whether the trial court properly granted Garrett's motion for partial summary judgment regarding Hunt Construction's vicarious liability; and

II. whether the trial court properly denied Hunt Construction's motion for summary judgment regarding its duty to Garrett.

## Facts

The Indiana Stadium and Convention Building Authority ("Owner") hired Hunt Construction to act as the construction manager for the construction of Lucas Oil Stadium. The construction contract between Owner and Hunt Construction consisted of documents entitled "Agreement Between Owner and Construction Manager" and "Indiana Stadium Project Safety Program."[2] Additionally, Hunt Construction entered into an agreement with the Indiana Department of Labor and Indiana Occupational Safety and Health Administration ("IOSHA") entitled "Partnership Agreement." Owner separately entered into agreements with contractors, including Baker Concrete Construction, Inc. ("Baker Concrete"). Hunt Construction did not enter into a contract with Baker Concrete or the other contractors.

On October 16, 2006, Garrett, an employee of Baker Concrete, was injured at the jobsite when another employee of Baker Concrete was removing a piece of forming material above her and the forming material fell, striking Garrett. Garrett sustained injuries to her head and left hand.

Garrett filed a complaint for negligence against Hunt Construction. Garrett then filed a motion for partial summary judgment regarding Hunt Construction's duty to her. Garrett argued that Hunt Construction had assumed a nondelegable duty to her through its contract and that it had assumed a duty to her through its conduct. In response, Hunt Construction filed a cross motion for summary judgment. Hunt Construction responded that it was entitled to summary judgment because it did not have a duty to Garrett. Hunt Construction argued that vicarious liability through a nondelegable duty was improper because a principal/contractor relationship did not exist between Hunt Construction and Baker Concrete. Additionally, Hunt Construction argued that it did not assume a duty to Garrett through its contracts or through its conduct.

After a hearing, the trial court granted Garrett's motion for partial summary judgment and denied Hunt Construction's motion for summary judgment. The trial court found that Hunt Construction had "assumed, by both contract and conduct, a nondelegable duty of safety to all employees at the construction project, including employees of contractors and subcontractors" and that "in addition to liability for their own negligence, [Hunt Construction was] vicariously liable for the negligence of [Garrett's] employer, Baker Concrete Construction." App. pp. 697–98. Hunt Construction now appeals.

## Analysis

Hunt Construction appeals the trial court's grant of partial summary judgment to Garrett regarding duty and the trial court's denial of Hunt Construction's mo-

2. The "Agreement Between Owner and Construction Manager" also referred to "General Conditions of the Contract for Construction" found in AIA Document A201/CMa—1992.

tion for summary judgment. Our standard of review for a trial court's grant of a motion for summary judgment is well settled. Summary judgment is appropriate only where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Mangold v. Ind. Dep't of Natural Res.*, 756 N.E.2d 970, 973 (Ind. 2001). All facts and reasonable inferences drawn from those facts are construed in favor of the nonmovant. *Mangold*, 756 N.E.2d at 973. Our review of a summary judgment motion is limited to those materials designated to the trial court. *Id.* We must carefully review a decision on summary judgment to ensure that a party was not improperly denied its day in court. *Id.* at 974.

■■■ Garrett brought this negligence action against Hunt Construction. To prevail on a claim of negligence the plaintiff must show: (1) duty owed to the plaintiff by defendant; (2) breach of duty because of conduct falling below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty. *Kroger Co. v. Plonski*, 930 N.E.2d 1, 6 (Ind.2010). The summary judgment motions here concern whether Hunt Construction had a duty to Garrett. Absent a duty there can be no negligence or liability based upon the breach. *Id.* Generally, whether a duty exists is a question of law for the court to decide. *Rhodes v. Wright* 805 N.E.2d 382, 386 (Ind.2004).

### I. Vicarious Liability

■■■ The trial court found that Hunt Construction was vicariously liable for the negligence of Baker Concrete. This finding was based on Garrett's argument that Hunt Construction owed her a nondelegable duty. In general, vicarious liability is "indirect legal responsibility." *Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142, 147

(Ind.1999) (quoting *Black's Law Dictionary* 1404 (5th ed.1979)). This doctrine applies where a party is legally responsible for the negligence of another, not because the party did anything wrong but rather because of the party's relationship to the wrongdoer. *Id.* Courts employ various legal doctrines to hold people vicariously liable, including respondeat superior, apparent or ostensible agency, agency by estoppel, and the non delegable duty doctrine. *Id.* Some doctrines are based in tort law, and some are based in agency law. *Id.* at 147–48.

■■■ In the construction context, "the long-standing general rule has been that a principal is not liable for the negligence of an independent contractor." *Carie v. PSI Energy, Inc.*, 715 N.E.2d 853, 855 (Ind. 1999). However, "[w]hile a master is generally not liable for the negligence of an independent contractor, the master may be liable if the independent contractor was performing a non-delegable duty." *Sword*, 714 N.E.2d at 147 n. 4 (citing *Bagley v. Insight Communications Co.*, 658 N.E.2d 584, 586, 588 (Ind.1995)). "A non-delegable duty is one that public policy holds to be so important that one party should not be permitted to transfer the duty (and its resultant liability) to another party." *Id.* Nondelegable duties encourage the employer of the contractor to participate in the control of work covered by the exceptions in order to minimize the risk of resulting injuries. *Carie*, 715 N.E.2d at 855.

Indiana courts have recognized five nondelegable duties: (1) where the contract requires the performance of intrinsically dangerous work; (2) where the principal is by law or contract charged with performing the specific duty; (3) where the act will create a nuisance; (4) where the act to be performed will probably cause injury to others unless due precaution is taken; and (5) where the act to be performed is illegal.

*Id.* The second nondelegable duty, "where the principal is by law or contract charged with performing the specific duty," is at issue here. *Id.*

■ On appeal, Hunt Construction argues that vicarious liability is inappropriate in this situation because there was no principal/contractor relationship between Hunt Construction and Baker Concrete. In response, Garrett argues that contractual privity is not required to find Hunt Construction vicariously liable.[3] Although we agree that contractual privity is not required to apply the doctrine of vicarious liability, one of the recognized relationships must be present for Hunt Construction to be vicariously liable for any alleged negligence by Baker Concrete.

In construction litigation cases, vicarious liability has generally been applied in the general contractor/subcontractor relationship. *See Stumpf v. Hagerman Construction Corp.*, 863 N.E.2d 871, 876–80 (Ind.Ct. App.2007) (holding that a general contractor assumed a nondelegable duty of care for the safety of all 'employees, including the subcontractor's employees), *trans. denied.* Here, however, Hunt Construction was the construction manager, not the general contractor.[4] Hunt Construction

had contracted with Owner, and Baker Concrete had also separately contracted with Owner. The general contractor/subcontractor or principal/independent contractor relationship does not exist here. Under these circumstances, there is no basis for finding that Hunt Construction owed a nondelegable duty to Garrett based upon its relationship to the alleged wrongdoer, Baker Concrete. We conclude that the vicarious liability doctrine is inapplicable here. *See, e.g., Indian Trucking v. Harber*, 752 N.E.2d 168, 177 n. 5 (Ind.Ct. App.2001) (rejecting an argument that vicarious liability was applicable where each defendant had a "discreet and defined legal duty in tort and [was] liable through its own breach of duty"). Consequently, we conclude that the trial court erred by granting Garrett's motion for partial summary judgment on this basis.

### II. Duty to Garrett

■ Although we have concluded that Hunt Construction did not have a duty to Garrett by virtue of vicarious liability, we must also address the parties' argument that Hunt Construction independently had a duty to Garrett by virtue of its contracts or its conduct. We begin by addressing

---

**3.** Garrett cites *Williams v. R.H. Marlin, Inc.*, 656 N.E.2d 1145 (Ind.Ct.App.1995), for the proposition that a contractor may be held liable for the negligent acts of another, outside of the master-servant relationship, if that party assumes a contractual duty of care. In *Williams*, a construction worker was injured by a crane operator. The crane had been rented by the general contractor for use on the jobsite. The construction worker filed a complaint against several companies and individuals, including the general contractor, the crane operator, the crane company, and a subcontractor. Vicarious liability was at issue in considering the liability of the crane company and the general contractor. Garrett argues vicarious liability was also at issue in considering the liability of the subcontractor, but that was clearly not the case. We stated that, with respect to the subcontractor, the

construction worker did not "premise his argument on a respondeat superior theory of liability." *Williams*, 656 N.E.2d at 1154. We concluded that "although [the subcontractor was] not susceptible to liability based on a respondeat superior theory, it did assume a contractual duty of safety toward [the construction worker]." *Id.* at 1155.

**4.** In general, a construction manager "coordinates and manages the building process. The construction manager acts as a fiduciary for the owner, a fact which makes the project a cooperative team effort rather than a proceeding among adversaries, a situation which is not uncommon in public sector construction." *Attlin Const., Inc. v. Muncie Cmty. Sch.*, 413 N.E.2d 281, 293 (Ind.Ct.App.1980).

whether Hunt Construction had a duty of care to Garrett as a result of its contracts.

"A duty of care, the breach of which will support a negligence action, may arise contractually." *Plan–Tec, Inc. v. Wiggins,* 443 N.E.2d 1212, 1218 (Ind.Ct. App.1983). The extent of the duty owed, if any, is a matter of contractual interpretation. *Id.* In determining whether a duty exists, this court will give effect to the intent of the parties as reflected by the language of the document. *Id.* Where the contract affirmatively evinces an intent on the part of the parties to charge one party with a duty of care, actionable negligence may be predicated upon the contractual duty. *Id.*

Several Indiana cases deal with negligence of a construction manager where the duty is based on the contract. In *Plan–Tec,* we found no contractual duty where the general conditions of the contract stated that the contractors were to have safety responsibility and that the construction manager had no "direct or indirect responsibility for matters relative to Project safety." *Id.* at 1219 n. 3. On the other hand, in *Perryman v. Huber, Hunt & Nichols, Inc.,* 628 N.E.2d 1240, 1244–45 (Ind.Ct.App. 1994), *trans. denied,* we found a duty based on the contract where the contract provided that the construction manager would comply with all applicable state and federal statutes and regulations and would require compliance from the contractors. The contract also provided that the construction manager was responsible for reviewing contractors' safety programs and making recommendations. We held that the construction manager accepted a contractual duty to require the contractor to install safety nets or install the nets itself.

Here, Hunt Construction entered into several contracts, and many provisions of the contracts addressed safety concerns. The three contracts at issue here are the "Agreement Between Owner and Construction Manager," the "Indiana Stadium Project Safety Program," and the "Partnership Agreement" with the Indiana Department of Labor and IOSHA. Hunt Construction focuses on provisions of the agreements that limit the responsibilities of the construction manager and detail the safety obligations of the individual contractors and subcontractors. However, our focus must be on the intent of the agreements regarding the construction manager's responsibilities, not the contractor and subcontractor responsibilities. The fact that the contractors also accepted a duty regarding safety does not in any way alter Hunt Construction's duties or liabilities under the contracts. *See Perryman,* 628 N.E.2d at 1244–45.

In particular, Hunt Construction relies upon the following provisions in the Agreement Between Owner and Construction Manager:

> Without assuming the safety obligations and responsibilities of the individual Contractors, the Construction Manager shall: (a) develop a comprehensive safety program applicable to the Project; (b) coordinate the safety program with the safety requirements of the OCIP program if applicable and (c) include the safety program requirements and allocations of responsibility applicable to the individual Contractors in the Contract Documents, bid documents and Construction Contracts.

App. p. 92.

> **2.4.2 Contract Administration....**
> The administration of the Construction Contracts and other services provided by the Construction Manager during the Construction Phase are rendered solely for the benefit of the Owner and not for the benefit of the Contractors, the Architect, or other parties performing

Work or services with respect to the Project. . . .

*Id.* at 97.

**2.4.14 Limitations on Construction Manager's Review of Contractor's Work.** With respect to each Contractor's Work on the Project, the Construction Manager shall not have control over or charge of or be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work of each of the Contractors, since these are the Contractor's responsibilities. The Construction Manager shall not be responsible to the Owner for a Contractor's failure to carry out its Work in accordance with the Contract Documents unless the Contractor's failure is caused by the Construction Manager's error, omission, negligence or breach of contract or if the Construction Manager knew, or in the exercise of its obligations to the Owner pursuant to this Agreement reasonably should have known, of defects, deficiencies or deviations in the Work of a Contractor and failed to promptly notify the Owner and Architect and to take appropriate timely action pursuant to this Agreement.

*Id.* at 104–05.

**12.7 No Third Party Benefit.** Except as provided in Article 2.6, by executing this Agreement, the parties do not bestow, nor do they intend to bestow, any rights, privileges or interest in favor of any persons or entities who are not signatories to this Agreement and nothing contained in this Agreement shall be construed to create a contractual relationship with (express, implied, third party beneficiary or otherwise) or a cause of action in favor of any persons or entities who are not signatories to this Agreement.

*Id.* at 143.

The Agreement Between Owner and Construction Manager also provides:

**2.4.11 Safety.** With respect to the Project, the Construction Manager shall:

**2.4.11.1** review the safety programs of each Contractor and monitor the implementation of those programs for compliance with the safety program contained in the Contract Documents, for compliance with applicable federal, state and local rules, codes, regulations, and statutes applicable to safety measures, including OSHA and IOSHA and for coordination with the safety programs of the other various Contractors. Each individual Contractor, however, shall remain the controlling employer responsible for the safety programs and precautions to be controlled by such Contractors. The Construction Manager's responsibilities for review, monitoring and coordination of the Contractors' safety programs shall not extend to direct control over or charge of the acts or omissions of the Contractors, Subcontractors, their agents or employees or any other persons performing portions of the Work and not directly employed by the Construction Manager;

**2.4.11.2** routinely inspect the Project to determine: (a) if the Contractors have erected and/or implemented appropriate safety procedures and warning to guard against injury [sic] members of the general public, including to employees of or visitors to the Existing Facilities, and to guard against damage to the Existing Facilities and other surrounding property; (b) if the ongoing Work has been performed or appropriately secured to avoid unreasonable disruption to the ongoing operation of the Existing Facilities; and (c) if the Contractors

have implemented appropriate security and safety measures considering the upcoming scheduled events to be held in the Existing Facilities;

**2.4.11.3** immediately notify the involved Contractor, if the Construction Manager observes any construction activity or practice it believes to be in violation of the safety program as set forth in the Contract Documents, OSHA, or IOSHA or other applicable safety standards and order the Contractor to take all appropriate steps to correct the violation, but any failure of the Construction Manager to observe and/or provide the notice as required herein, shall not relieve the Contractors of their safety obligations as the controlling employer;

**2.4.11.4** if any Contractor fails to promptly correct such construction activity or practice or fails to coordinate its safety program with those of other Contractors, the Construction Manager shall notify the Owner and Architect, in writing, and shall set forth therein the corrective action it recommends;

**2.4.11.5** report to the Owner verbally and in writing, any injury or accident occurring at the site within twenty-four (24) hours, or within a shorter period of time if required by law, and immediately report to the Owner's Representative any accident or occurrence on the Project which has caused death, serious injury or significant damage to the Project;

**2.4.11.6** be directly responsible for the safety requirements and programs applicable to the activities and services performed by the Construction Manager's own employees, other members of its Operations Team and other parties with whom it has contracted to perform services on its behalf; and

**2.4.11.7** coordinate the Construction Manager's own safety program with that of the Contractors and the OCIP program if applicable.

*Id.* at 102–03.

The Indiana Stadium Project Safety Program also addresses Hunt Construction's responsibilities regarding safety and provides:

> Contractors and their employees must understand what is required of them because they are accountable for maintaining a safe Project. Nothing contained in this Project Safety Program is intended to relieve any contractor of the obligations assumed by them under their contract with the Owner or as required by law.

*Id.* at 165.

> Each contractor and its employees have the explicit responsibility to provide a safe workplace and follow safe work practices at all times. The [Construction Manager Safety Representative ("CMSR")] and the Construction Manager's staff have the responsibility to foster an environment to assist contractors to achieve the goals of a safe and healthy Project workplace.

*Id.* The CMSR is the Construction Manager's designated full time on-site safety professional. Contractors were required to submit a "site specific safety program" to the CMSR. *Id.* at 170. If the Construction Manager was "aware of any noncompliance with safety requirements, or is advised of such noncompliance," the Construction Manager had the following options: (1) deny any claim or request for additional time or money for suspension of work for the unsafe circumstances; and (2) remove any employee or piece of equipment deemed to be unsafe. *Id.* at 181. Hunt Construction's CMSR had several responsibilities, including, for example: (1) reviewing and approving each

contractor's Contractor Safety Representative ("CSR"); (2) having the right to require the contractor or subcontractor to provide a full-time on-site CSR if the contractor demonstrated difficulty or fails to fulfill its safety responsibilities; (3) receiving weekly inspection reports and daily inspection reports upon request; and (4) receiving preliminary investigation findings for all incidents and accidents and facilitate an accident/incident review meeting.

Finally, the Partnership Agreement with the Indiana Department of Labor and IOSHA also addressed safety responsibilities of Hunt Construction. The goal of the Partnership Agreement was to provide a safe work environment for all employees and established a "cooperative effort in ensuring safety and maintaining an open line of communication between IOSHA, Hunt Construction ... and contractors and their subcontractors" on the project. *Id.* at 225. The Partnership Agreement also provided that "[s]pecifications and assignments within this partnership document do not relieve the contractors from or lessen their safety & health responsibilities nor change any contractual obligations between Hunt Construction Group, Inc. in association with Smoot Construction/Mezzetta Construction and the project Owner...." *Id.* at 225. Under the Partnership Agreement, Hunt Construction was required to provide all employees with a site-specific safety orientation and require all contractors and subcontractors to submit their written safety and health programs. Additionally, the Partnership Agreement required Hunt Construction to:

1. Implement a comprehensive safety and health program, which includes:
   a. Management commitment and employee involvement
   b. Worksite analysis
   c. Hazard control
   d. Provide information on available training assistance for Contractors and their subcontractors
   e. Require contractors and their subcontractor(s) to implement an appropriate Disciplinary Program.

2. Refer Contractors and their subcontractors who have not developed their own safety and health program to an appropriate independent safety consultant or trade organization.

3. Have the authority to enforce safety rules and regulations. This authority will include provisions to hold contractors and employees accountable and, if necessary, take appropriate sanctions to enforce compliance with the established Project safety rules and regulations.

4. Require the use of conventional fall protection (i.e. personal fall arrest/restraint systems, safety net systems or guardrail systems) when performing work that is in excess of 6' above a lower level. This includes steel erection, roofing, scaffold operations and overhand blocklaying operations, even when it may exceed IOSHA requirements.

5. Where airborne silica exposure exists, [Hunt Construction] will require the use of wet cutting techniques when permitted by the architect/engineer and/or dust collection systems in addition to the appropriate use of approved respiratory protection where warranted....

6. Ground Fault Circuit Interrupters ... will be used throughout the project.

7. Proper guardrails will be present on all scaffolding over six feet.

8. Provide a Project Superintendent/Labor Representative Liaison, who will have as part of their job

description a responsibility for site safety, to serve as a point of contact and to assist the Safety Manager in overseeing the partnership goals.

9. Conduct and document a job site inspection weekly. This is in addition to the general, non-documented inspections that should occur daily.

10. Review quarterly accident reports with the Safety Commit tee including first aid and near miss reports.

11. Retain summary documentation of subcontractors' weekly toolbox talks.

12. Evaluate the effectiveness of the Fall Protection Plan, and take corrective action as needed.

13. Make available to IOSHA, upon request, the Lost Workday Incidence Rate (LWDI).

14. Provide signage identifying the site as an IOSHA Partnership Project.

15. In addition to IOSHA's notification requirements, Hunt Construction ... will notify the local IOSHA office of safety or health related events, which are likely to generate public attention and/or news media coverage....

*Id.* at 227–28. Companies participating in the Partnership Agreement received IOSHA incentives. Under the heading "Advantages," the Partnership Agreement provided: "This Partnership requires frequent inspections of the worksite by Hunt Construction ..., Contractors and their subcontractors and other members of the Partnership to identify and correct known hazards." *Id.* at 230–31.

According to Hunt Construction, those provisions indicate that its duty was to Owner only and that the individual contractors retained a duty regarding safety. Although the contracts at issue here contain some provisions purporting to limit Hunt Construction's duties regarding safety, other provisions give Hunt Construction significant duties regarding safety on the jobsite. Hunt Construction was responsible for approving contractors' safety programs, monitoring compliance with safety regulations, performing inspections, and addressing safety violations. Hunt Construction had the ability to remove any employee or piece of equipment deemed unsafe. As a result of these contractual provisions, we conclude that Hunt Construction assumed a duty to workers on the jobsite, including Garrett.[5] Consequently, we conclude that the trial court did not err by finding that Hunt Construction had a duty to Garrett by virtue of its contracts.[6] Because we conclude that Hunt Construction assumed a duty of care through its contract, we need not address whether it assumed a duty of care through its conduct.[7]

---

5. Relying upon *England v. Fairfield Contracting, Inc.,* 908 N.E.2d 238, 242 (Ind.Ct.App. 2008), Hunt Construction argues that, to the extent the contracts are ambiguous, the contracts do not affirmatively establish that the parties intended to charge Hunt Construction with a duty. However, we conclude that the contract provisions affirmatively evince an intent that Hunt Construction assume a duty of care to workers on the jobsite.

6. We conclude only that Hunt Construction had a duty to Garrett. Garrett still has the burden of demonstrating the remaining elements of a negligence action, i.e., a breach of duty because of conduct by Hunt Construction falling below the applicable standard of care and a compensable injury proximately caused by Hunt Construction's breach of duty.

7. "A duty of care may also arise where one party assumes such a duty, either gratuitously or voluntarily." *Phillips v. United Engineers & Constructors,* 500 N.E.2d 1265, 1269 (Ind. Ct.App.1986). The assumption of a duty creates a special relationship between the parties and a corresponding duty to act in the manner of a reasonably prudent person. *Id.* Failure to act in a reasonable manner will give rise to an action for negligence. *Id.* Whether a party has assumed a duty and the extent of

## Conclusion

Hunt Construction was not vicariously liable to Garrett, and the trial court erred by granting summary judgment to Garrett on this issue. However, Hunt Construction owed a duty to Garrett through its contracts, and the trial court properly granted summary judgment to Garrett on that issue and properly denied Hunt Construction's motion for summary judgment on that issue. We affirm in part and reverse in part.

Affirmed in part and reversed in part.

CRONE, J., concurs.

FRIEDLANDER, concurs in part and dissents in part with separate opinion.

FRIEDLANDER, Judge, concurring in part and dissenting in part.

I concur with the Majority that Hunt Construction, by virtue of its relationship to Baker Concrete, did not owe a nondelegable duty to Garrett so as to support a finding of vicarious liability. I respectfully dissent, however, from the Majority's conclusion that Hunt Construction independently owed a duty to Garrett based on contract. I would further conclude that Hunt Construction did not assume a duty to Garrett based on conduct.

A considered reading of the contract language as a whole makes clear that Hunt Construction did not assume a duty to Garrett by contract. The various contract documents expressly state that Hunt Construction's duties were undertaken "[w]ithout assuming the safety obligations and responsibilities of the individual Contractors," one of whom was Baker Concrete. *Appendix* at 92. Again, in paragraph 2.4.14, Owner and Hunt Construction made clear that Hunt Construction "shall not have control over or charge of or be responsible for ... safety precautions and programs in connection with the Work of each of the Contractors, since these are the Contractor's responsibilities." *Id.* at 104–05. The Agreement between the Owner and Hunt Construction further provided that Baker Concrete would "remain the controlling employer responsible for the safety programs and precautions" applicable to its work and that Hunt Construction's contractual responsibilities would "not extend to direct control over or charge of the acts or omissions of [Baker Concrete]." *Appendix* at 102–03.

These limiting provisions are an unequivocal statement that Hunt Construction was not responsible·for project safety and the safety of Baker Concrete's employees and that such responsibility remained with Baker Concrete. In drafting the documents, Hunt Construction and the Owner clearly expressed their intent in this regard. Where the contract indicates that the parties did not intend to charge one party with a duty of care, the contract will not support a claim of negligence. *See Williams v. Cingular Wireless*, 809 N.E.2d 473, 476 (Ind.Ct.App.2004); *Plan–Tec., Inc. v. Wiggins*, 443 N.E.2d 1212 (Ind.Ct. App.1983). The language employed by the Owner and Hunt Construction clearly demonstrates that the parties did not intend to charge Hunt Construction with a duty of care to onsite employees.

Further evidencing the intent of Hunt Construction and the Owner is the inclusion of language in the contract that Hunt Construction's services were for the sole benefit of the Owner and not the employees of a separate contractor on the project. While this duty may have coincidentally benefited the workers onsite, it does not alter the fact that Hunt Construction's obligations under its contract with the Owner

that duty, if any, are questions for the trier of fact. *Id.*

were intended to benefit the Owner, not the workers of other contractors.

Although the Majority quotes large portions of the various contract documents dealing with safety on the jobsite, the Majority pays short shrift to the language limiting Hunt Construction's liability, noting only that the contract contains provisions that "purport [ ] to limit Hunt Construction's duties regarding safety...." *Op.* at 804. The Majority wholly ignores the clear import of these provisions and fails to give them effect, essentially rendering them ineffective and meaningless. The Majority's holding will fundamentally alter contracts of this nature and make it virtually impossible for a contractor taking on the role of construction manager to limit its liability so as not to become an insurer of safety for workers of other contractors.

Indeed, the manner in which the contracts at issue here were drafted seems to me to be a well-settled practice in the industry. To impose a duty of care on Hunt Construction for the safety of the employees of each contractor here is tantamount to making Hunt Construction an insurer of safety. The parties clearly sought to avoid such an interpretation by including clear language limiting Hunt Construction's liability. Moreover, the Majority's construction of the contractual provisions at issue undermines the framework often employed in projects of this nature. To carry out the intent of the parties, we must give effect to the clear and unequivocal language in the contract documents that Hunt Construction owed a duty only to the Owner and not to the workers onsite.

Because the Majority found that Hunt Construction owed a duty of care pursuant to its contracts, the Majority did not address Garrett's argument that Hunt Construction also assumed a duty of care by its conduct. I reject Garrett's contention in this regard as well. Hunt undertook a duty to the Owner to insure there was a safety program in place for the project. Hunt Construction's conduct was in accordance with its contractual obligations to the Owner. In performing its duties to the Owner, Hunt Construction did not assume a duty of care to Garrett.

Absent a duty, a party may not be held liable for negligence. *See Williams v. Cingular Wireless,* 809 N.E.2d 473, *trans. denied.* Finding no duty on behalf of Hunt Construction, Hunt Construction is entitled to summary judgment. Accordingly, I would reverse the trial court's grant of partial summary judgment in favor of Garrett and order entry of summary judgment in favor of Hunt Construction.