ATTORNEYS FOR APPELLANTS
Mark D. Gerth
Steven E. Springer
Michael Wroblewski
Crystal G. Rowe
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
W.F. Conour
Timothy F. Devereux
Jeffrey A. Hammond
Indianapolis, Indiana

In the
Indiana Supreme Court

FILED
Mar 22 2012, 10:19 am

CLERK
of the supreme court,
court of appeals and
tax court

No. 49S02-1106-CT-365

HUNT CONSTRUCTION GROUP, INC.,
AND MEZZETTA CONSTRUCTION, INC.,

*Appellants (Defendants below)*,

v.

SHANNON D. GARRETT,

*Appellee (Plaintiff below)*.

Appeal from the Marion Superior Court, No. 49D01-0705-CT-21326
The Honorable David A. Shaheed, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 49A02-1001-CT-86

**March 22, 2012**

**Sullivan, Justice.**

An employee of a concrete subcontractor was injured in a workplace accident during the construction of Lucas Oil Stadium. She seeks to recover damages for negligence from the project's construction manager by whom she was not employed but whom she contends had a legal duty of care for jobsite-employee safety. Because we find that the construction manager

did not have, either by the terms of its contracts or by its actions, such a legal duty, we hold that the construction manager may not be held liable to the worker for negligence.

## Background

In the process of removing forming material from concrete, one of Shannon Garrett's coworkers dropped a piece of wood. That piece of wood struck Garrett and injured her head and left hand. At the time she was injured, both Garrett and her coworker were employees of Baker Concrete Construction, Inc., which had entered into a contract with the Indiana Stadium and Convention Building Authority ("Stadium Authority") to perform concrete work on Lucas Oil Stadium.

The defendant, Hunt Construction Group, Inc.,[1] had entered into a contract with the Stadium Authority to act as the construction manager for the building of Lucas Oil Stadium.[2] Hunt had no contractual relationship with Baker Concrete or any other contractors.

An employee's rights and remedies against his or her employer on account of jobsite injuries are governed by the Indiana's Worker's Compensation Act. But that Act does not restrict an injured employee from pursuing a claim against any "other person than the employer." Ind. Code § 22-3-2-13 (2007). Provided with this right in addition to her entitlement to worker's compensation benefits, Garrett sued Hunt for negligence. She then filed a motion for partial summary judgment, requesting a determination that Hunt was "vicariously liable" for the actions of Baker Concrete. Hunt opposed Garrett's request and filed its own motion for summary judgment, seeking judgment in its favor on grounds that it could not be liable to Garrett for negligence because it did not owe Garrett a duty of work place safety under any recognized theory of law.

---

[1] Mezzetta Construction, Inc., was also named as a defendant because it "performed functions with Hunt on the jobsite." Appellants' Br. 2 n.1. Hunt and Mezzetta are referred to collectively in this opinion as "Hunt."

[2] Hunt had also entered into an agreement with the Indiana Department of Labor and Indiana Occupational Safety and Health Administration ("IOSHA"). That agreement states that it does not "change any contractual obligations between [Hunt and Stadium Authority]." Appellants' App. 225. The main focus of our opinion, then, will be on Hunt's contract with Stadium Authority.

After a hearing, the trial court ruled in Garrett's favor that Hunt could be held vicariously liable for the actions of Baker Concrete and denied Hunt's request for judgment in its favor. The trial court then certified its rulings for interlocutory appeal. The Court of Appeals accepted the appeal. It unanimously held that Hunt was not vicariously liable to Garrett for any negligence of Baker Concrete because Hunt and Baker Concrete did not have the requisite relationship. Hunt Constr. Grp., Inc. v. Garrett, 938 N.E.2d 794, 799 (Ind. Ct. App. 2010), reh'g denied. But it was divided on whether Hunt owed a duty to Garrett such that Hunt may be liable to her for negligence. A majority of the panel held that Hunt owed her a duty through its contracts, id. at 804, while Judge Friedlander concluded that Hunt did not, id. at 805-06 (Friedlander, J., concurring in part and dissenting in part).

Hunt sought, and we granted, transfer, Hunt Constr. Grp. v. Garrett, 950 N.E.2d 1212 (Ind. 2011) (table). However, we summarily affirm the unanimous decision of the Court of Appeals reversing the trial court's judgment on the issue of vicarious liability.[3] Ind. Appellate Rule 58(A)(2).

**Discussion**

**I**

A brief overview of the construction industry as it relates to this case is a helpful starting point. "Construction management" has grown in recent decades as an alternative to the conventional approach to large construction projects. See Contractor's and Construction Manager's Rights and Duties, 2-5B Construction L. Online (MB) P 5B.03 ¶¶ [1][a]-[d] (2011). A conventional construction project typically features owners, architects, engineers, general contractors, and subcontractors with discrete project responsibilities, none of which consist of overall management of the construction project as a primary activity. Id. ¶¶ [1][a]-[b]. In contrast, construction management separates and consolidates the management function in one entity called the

---

[3] In their briefs, the parties discuss the concept of "nondelegable duties" at various points. We find this concept apt only to the issue of vicarious liability on which, as noted in the text, we summarily affirm the decision of the Court of Appeals.

3

construction manager. Id. ¶ [1][c]. Construction management offers certain advantages over the conventional approach – sophisticated cost estimating capabilities, practical analysis of design alternatives, and shortened development processes. Id. ¶ [1][d]. It also has its disadvantages – higher fees, coordination problems, and a lack of single-point responsibility for both the construction process and the construction product. Id. A construction manager undertakes a variety of responsibilities as specified in a written contract between the construction manager and the project owner. Id. at ¶ [3]. And some of these responsibilities often relate to jobsite safety. Id. at ¶ [3][f].

As in the case before us today, when the employee of a contractor or subcontractor is injured in a workplace accident on a jobsite where a construction manager arrangement is in place, the employee sometimes seeks to recover from the construction manager. The first reported case in Indiana of this nature was decided by the Court of Appeals almost three decades ago. Plan-Tec, Inc. v. Wiggins, 443 N.E.2d 1212 (Ind. Ct. App. 1983). Plan-Tec has proved to provide a durable template for resolving the issues in cases like this and we will use it for that purpose here.

In Plan-Tec, Plan-Tec, Inc., signed a contract with North Clark Community Hospital to provide construction management services for a hospital construction project. Id. at 1216. After construction began, the construction manager also assumed additional responsibility for changing expansion joints on the exterior skin of the building in order to suit the architect's modifications.[4] Id. A journeyman carpenter employed by one of a number of subcontractors on the expansion joint work was injured in a jobsite accident when the scaffold on which he was working collapsed. Id. at 1216-17. The plaintiff-carpenter sued the defendant-construction manager; a jury verdict was returned in the plaintiff-carpenter's favor. Id. at 1217. On appeal, the defendant-construction manager argued that it owed no legal duty to the project contractors' and subcontractors' employees for their safety and, as such, the jury verdict was contrary to law. Id.

---

[4] This occurred because both of the project subcontractors for exterior work declined responsibility for the expansion joint work which was not within the contemplation of either of their contracts. Plan-Tec., 443 N.E.2d at 1216.

4

Plan-Tec held that a construction manager owes a legal "duty of care" – a necessary element to recover for negligence[5] – for jobsite employee safety in two circumstances: (1) when such a duty is imposed upon the construction manager by a contract to which it is a party, id. at 1218; or (2) when the construction manager "assumes such a duty, either gratuitously or voluntarily," id. at 1219 (citations omitted).

The Court of Appeals first analyzed the contract at issue in the case. It found that there were no provisions in the contract pursuant to which the construction manager "contractually accepted the duty to maintain safety on the project." Id. at 1218. And the court noted that the "contract unequivocally state[d] that the contractors [were] to have the responsibility for project safety and the safety of their employees" and that it contained a proviso that "'[i]n no case shall . . . the Construction Manager . . . have either direct or indirect responsibility for matters relative to Project safety.'" Id. at 1218 & n.3 (last bracket in original). The court concluded that the construction manager had not "contractually accepted a duty of care by which a negligence action may be supported." Id. at 1219.

The court went on to analyze whether the construction manager had assumed a legal duty for jobsite-employee safety by its actions. Starting with the fact that the carpenter had been injured when the scaffold on which he had been working collapsed, the court observed that the scaffold and related equipment were all the property of the carpenter's employer, used exclusively for its employees in their work. Id. at 1220. "As a general proposition," the court said, "under these facts, [the construction manager's] duty to provide [the carpenter] with a safe place to work would not extend to the operation of the scaffold which was owned and erected by [the carpenter's employer] and operated for the benefit of [its] employees." Id. (citation omitted).

But the court went on to examine whether there was sufficient evidence upon which to present to a jury the question of whether the construction manager assumed a duty to provide the carpenter with a safe place to work. Id. at 1220. The court found such evidence in the facts that the construction manager appointed a safety director, initiated weekly safety meetings, and di-

---

[5] Kroger Co. v. Plonski, 930 N.E.2d 1, 6 (Ind. 2010) ("Absent a duty there can be no negligence or liability based upon the breach." (citing Peters v. Forster, 804 N.E.2d 736, 738 (Ind. 2004)).

rected that certain safety precautions be taken by the contractors.  Id.  In addition, the court said that the safety director himself testified that each morning he inspected the scaffolding.  Id.

To summarize Plan-Tec, the Court of Appeals held that (1) where the construction management contract did not impose any obligation on the construction manager for jobsite-employee safety and contracts with project contractors provided that jobsite safety was the responsibility of the contractors and not the construction manager, the construction manager had no duty of care for jobsite-employee safety; but (2) where the construction manager took specific actions related to employee safety, there was an issue of fact as to whether it had assumed a legal duty of care for employee safety.

## II

As mentioned a moment ago, Plan-Tec provides a good template for analyzing this claim of negligence against a construction manager for jobsite injuries suffered by a subcontractor's employee:  whether the construction manager owed the employee a legal duty of care for jobsite-employee safety requires answering both whether (1) such a duty was imposed upon the construction manager by a contract to which it was a party and (2) the construction manager assumed such a duty, either gratuitously or voluntarily.  And indeed Garrett maintains that Hunt owed her a legal duty of care in these two ways – through Hunt's contractual obligations and through Hunt's actions.  We consider each of them in turn.

## A

In Plan-Tec, the Court of Appeals found that no legal duty of care for jobsite-employee safety was imposed upon the construction manager by any contract to which it was a party. First, the construction-management contract itself did not specify that the construction manager had any responsibilities for safety whatsoever.  Id. at 1218.  Second, counterpart construction contracts signed by contractors and subcontractors indicated that they had responsibility for project safety and the safety of their employees.  Id. at 1218 & n.3.  Third, those contracts ex-

6

pressly disclaimed any direct or indirect responsibility on the part of the construction manager for project safety. Id.

Here the record is somewhat different but we reach the same result. Unlike the Plan-Tec construction manager contract, Hunt's contract does impose responsibilities on Hunt related to safety.[6] These provisions regarding a construction manager's jobsite-safety obligations are similar to those that have been held to support a legal duty of care for jobsite safety to employees in other construction-site cases. See Moore v. Shawmut Woodworking & Supply, Inc., 788 F. Supp. 2d 821, 825-26 (S.D. Ind. 2011); Stumpf v. Hagerman Constr. Corp., 863 N.E.2d 871, 878 (Ind. Ct. App. 2007), trans. denied; Harris v. Kettelhut Constr., Inc., 468 N.E.2d 1069, 1072-73 (Ind. Ct. App. 1984), trans. denied; Kevin R. Sido, Architect and Engineer Liability: Claims Against Design Professionals §12.03[D][1] n.56 (3d ed. 2006) (citing cases); cf. Shawnee Constr. & Eng'g, Inc. v. Stanley, 962 N.E.2d 76, 84, 86 (Ind. Ct. App. 2011) (finding no duty of care), trans. denied.

But none of the safety provisions in the construction-management contract here impose upon Hunt any specific legal duty to or responsibility for the safety of all employees at the construction site. There is no language like that used in Moore, 788 F. Supp. 2d at 825 ("The Contractor shall take reasonable precautions for safety of . . . employees on the Work"); in Stumpf, 863 N.E.2d at 877 ("The Contractor shall take all necessary precautions for the safety of employees on the work"); or in Harris, 468 N.E.2d at 1072 ("The Contractor shall take all necessary precautions for the safety of all employees on the Project").

To the contrary, as recognized by Judge Friedlander in his dissent, other provisions unequivocally support the opposite conclusion. Hunt Constr., 938 N.E.2d at 805-06. Hunt's contract expressly states that its construction-management services are to be "rendered solely for the benefit of the [Stadium Authority] and not for the benefit of the Contractors, the Architect, or other parties performing Work or services with respect to the Project." Appellants' App. 97. Moreover, the contract provided that Hunt was not "assuming the safety obligations and respon-

---

[6] These provisions, set forth in "Section 2.4.11 Safety" of the construction management contract, are set forth verbatim in the opinion of the Court of Appeals. See Hunt Constr., 938 N.E.2d at 801-02. We also set forth several of them, infra. For these reasons, we find it unnecessary to restate them here.

sibilities of the individual Contractors," id. at 92, and that Hunt was not to have "control over or charge of or be responsible for . . . safety precautions and programs in connection with the Work of each of the Contractors, since these are the Contractor's responsibilities," id. at 104.

Similarly, with regard to Hunt's responsibility to review and monitor contractors' safety programs, the contract reiterates that Baker Concrete was "the controlling employer responsible for [its own] safety programs and precautions," and that Hunt's responsibility to review, monitor, and coordinate these programs did "not extend to direct control over or charge of the acts or omissions of the Contractors, Subcontractors, their agents or employees or any other persons performing portions of the Work and not directly employed by [Hunt]." Id. at 102. Thus, the claim that Hunt owed a legal duty to Garrett to ensure that Baker Concrete safely removed the forming material from the concrete is contrary to the language of the contracts; Baker Concrete was responsible for that. In this respect, too, the contractual arrangements here mirror those in Plan-Tec, where counterpart construction contracts signed by contractors and subcontractors indicated that they had responsibility for project safety and the safety of their employees.

In short, Hunt did not undertake in its contracts a duty to act as the insurer of safety for everyone on the project. Rather, Hunt's responsibilities were owed only to Stadium Authority, not to workers like Garrett. Cf. Leppo v. Jacobs Facilities, Inc., No. CCB-09-3415, 2010 U.S. Dist. LEXIS 79639, at *8 (D. Md. Aug. 6, 2010) (rejecting argument that construction manager with similar contractual duties engaged in safety monitoring services for the benefit of construction contractors).

Garrett compares the terms of Hunt's contracts to those in Perryman v. Huber, Hunt & Nichols, Inc., 628 N.E.2d 1240, 1243-45 (Ind. Ct. App. 1994) (holding that construction manager had contractual duty to enforce safety regulations), trans. denied; and argues that Hunt is not relieved of potential liability merely because Baker Concrete also had certain safety obligations, see id. at 1244 & n.9, 1245 (noting contractual provisions supporting duty and possibility of holding multiple parties liable). First, we note that the construction manager in Perryman apparently had more contractual authority over the contractors there than Hunt did in this case. See id. at 1242 (construction manager had exclusive authority to direct and control work on the entire

8

project).  And second, even the court in that case recognized that the construction manager could have avoided liability by making certain changes to the language of its contracts, including the addition of language expressly limiting its responsibility for safety.  See id. at 1245 n.10 (reasoning that if construction manager wanted to avoid liability it should not have included in the contract the provision providing that it would require from contractors compliance with state and federal regulations, and to make certain its avoidance of liability, it also could have included a provision with language expressly disavowing responsibility (citing Plan-Tec, 443 N.E.2d at 1218)).

Garrett marshals Rhodes v. Wright, 805 N.E.2d 382 (Ind. 2004) (duty owed by owner in a premises-liability case), and Young v. Tri-Etch, Inc., 790 N.E.2d 456 (Ind. 2003) (contract's time limitation provision not applicable to plaintiff who was not party to contract), related appeal on other grounds, Tri-Etch, Inc. v. Cincinnati Ins. Co., 909 N.E.2d 997 (Ind. 2009), in support of her argument.  While both of these cases were resolved in the plaintiffs' favor, neither decision involved the issue at stake here – whether a contract to which the defendant was a party imposed upon the defendant a legal duty of care to the plaintiff.  Rhodes, 805 N.E.2d at 385-86; Young, 790 N.E.2d at 459.  Garrett's reliance on these cases is misplaced.

Garrett also cites King v. Northeast Security, Inc., 790 N.E.2d 474 (Ind. 2003) (private security service owed duty to student assaulted in school parking lot).  We concluded in King that the specific duty undertaken in the contract for security services in that case was meant to protect students like the one bringing the claim, or in other words, that the duty was owed to the student.  Id. at 485-86.  As just discussed, we find no such undertaking in the construction-management contract here.

We believe our resolution of this claim promotes safety at construction sites.  As a general rule, an owner of property has no duty to provide independent contractors with a safe workplace.[7]  Robinson v. Kinnick, 548 N.E.2d 1167, 1168 (Ind. Ct. App. 1989), trans. denied; see Stumpf, 863 N.E.2d at 876 (employer has no duty to supervise work of independent contrac-

---

[7] Garrett's suit is not against Stadium Authority, nor has she argued that Stadium Authority owed her a duty.

9

tor to assure safe workplace). Thus, Stadium Authority's contracting with Hunt for specific responsibilities related to jobsite safety, and Hunt's taking on these responsibilities, was an effort to promote safety on the construction site beyond that required by law. At oral argument, Garrett advanced the all-or-nothing proposition that with Hunt's responsibility for jobsite safety comes liability and that the only way to avoid liability is to turn a blind eye toward safety. But safety at construction sites, especially at large public-works projects like this one, should not be sacrificed for fear of exposure to liability. The contracts at issue here reflect a way of promoting safety without exposing construction managers to suits like this one. We agree with Judge Friedlander that the position advanced by Garrett would "make it virtually impossible for a contractor taking on the role of construction manager to limit its liability so as not to become an insurer of safety for workers of other contractors." Hunt Constr., 938 N.E.2d at 806 (Friedlander, J., concurring in part and dissenting in part). Indeed, "[t]he parties clearly sought to avoid such an interpretation by including clear language limiting [Hunt's] liability." Id.

Hunt's contracts did not impose upon it a legal duty of care for jobsite safety to contractor and subcontractor employees.

**B**

We now turn to the question of whether Hunt assumed by its actions or conduct a legal duty of care for jobsite-employee safety, either gratuitously or voluntarily.

There are a series of cases decided by both the Court of Appeals and the federal courts applying Indiana law reciting that an employee of a construction-site contractor can be owed a legal duty of care for his or her safety by a project owner or construction manager that, though not obligated by contract to provide jobsite safety, takes actions such as appointing a safety director, initiating weekly safety meetings, and directing the contractors to observe certain safety precautions. Bateman v. Cent. Foundry Div., Gen. Motors Corp., 992 F.2d 722, 725-26 (7th Cir. 1993); Vaughn v. Daniels Co. (W. Va.) Inc., 777 N.E.2d 1110, 1135-38 (Ind. Ct. App. 2002), aff'd in relevant part, rev'd in part, 841 N.E.2d 1133, 1144-45 (Ind. 2006); Merrill v. Knauf Fiber Glass GmbH, 771 N.E.2d 1258, 1270-71 (Ind. Ct. App. 2002), trans. denied; Robinson, 548 N.E.2d at 1169; Teitge v. Remy Constr. Co., 526 N.E.2d 1008, 1014-15 (Ind. Ct. App. 1988);

Phillips v. United Eng'rs & Constructors, Inc., 500 N.E.2d 1265, 1268-69 (Ind. Ct. App. 1986); Perry v. N. Ind. Pub. Serv. Co., 433 N.E.2d 44, 49-50 (Ind. Ct. App. 1982), trans. denied. Garrett deploys some of these cases in support of her position that Hunt's actions in this case demonstrate that it assumed a legal duty of care for her safety.

Of these cases, only Phillips examines the extent of the duty of care for jobsite-employee safety of a construction manager; most of these cases mention construction managers because they rely on Plan-Tec. We think they do so with inadequate precision.

It is certainly true that in Plan-Tec, the court held there was a question for the jury as to whether the construction manager assumed a legal duty of care for jobsite-employee safety (and that a jury's verdict to that effect was not contrary law) based on the following evidence: that the construction manager apparently appointed a safety director; that the construction manager initiated weekly safety meetings and directed that certain safety precautions, such as building guard rails around floor openings and wearing hard hats in working areas, be taken by the contractors; and that each morning the construction manager's safety director inspected the scaffolding that collapsed. 443 N.E.2d at 1220. But to say that Plan-Tec holds that it always creates a jury question as to duty when a construction manager takes such actions ignores a key aspect of Plan-Tec. In Plan-Tec, the construction documents clearly indicated that the individual contractors were responsible for safety and that Plan-Tec was not responsible for safety. But after the project was underway, the construction manager explicitly agreed to take on specific supervisory responsibilities beyond those set forth in the original construction documents.[8] "As a general proposition," the Court of Appeals said, the construction manager's responsibilities would not extend to a carpenter employed by a contractor. Id. But because the construction manager took on responsibilities beyond those of the initial construction documents, it was appropriate to examine those additional responsibilities to see if they created a legal duty of care for employee

---

[8] As discussed in Part I (see footnote 4, supra, and accompanying text), the specific work in which the carpenter was engaged when the scaffold collapsed – changing expansion joints on the exterior skin of the building in order to suit the architect's modifications – was not work within the contemplation of either of the project's subcontractors for exterior work, one of which was the carpenter's employer. When both declined responsibility for the expansion joint work, the construction manager "then assumed the responsibility for the work order and had it performed by [the carpenter's employer]." Plan-Tec, 443 N.E.2d at 1216.

safety on that part of the project for which the construction manager had assumed additional responsibilities.

We hold that for a construction manager not otherwise obligated by contract to provide jobsite safety to assume a legal duty of care for jobsite-employee safety, the construction manager must undertake specific supervisory responsibilities beyond those set forth in the original construction documents. In the case before us today, there is no contention that Hunt undertook any such responsibilities, at least for any part of the project on which Garrett was working.

Hunt's specific actions regarding safety did not go beyond what was required of it in the original construction documents. Each action Hunt took that Garrett contends constituted Hunt's assumption of a legal duty of care for her safety, Hunt was in fact required to perform by its contract with the Stadium Authority. Unlike the situation in Plan-Tec, these actions did not go beyond what was required of Hunt in the original construction documents.

For example, Garrett identifies Hunt's safety representatives conducting a safety committee meeting every Monday at which each contractor or subcontractor was required to have a competent person present as an action that demonstrated Hunt's assumption of a legal duty of care for her safety. Appellee's Br. 29. But under section 2.4.4.1 of Hunt's contract with the Stadium Authority, Hunt was required to "schedule and conduct weekly meetings [with Trade Contractors] to discuss such matters as safety." Appellants' App. 98.

Similarly, Garrett identifies the fact that Hunt's safety representatives inspected the site daily for violations of the project safety program as another action that demonstrated Hunt's assumption of a legal duty of care for her safety. Appellee's Br. 29-30. But under section 2.4.11.2 of Hunt's contract with the Stadium Authority, Hunt was required to "routinely inspect the Project to determine: (a) if the Contractors [had] erected and/or implemented appropriate safety procedures and warnings to guard against injury [to] members of the general public, including employees of or visitors to the Existing Facilities." Id. at 102.

Several more examples should suffice:

> Action Garrett identifies as demonstrating Hunt's assumption of a legal duty of care for her safety:  Hunt's safety representatives completed daily safety observation reports that contained their safety observations and specifically included the activities of the subcontractors on the project.  These reports would be filed electronically with Hunt and a copy sent to all subcontractors.  They included the corrective action required to be taken and whether the safety issue was corrected.  Appellee's Br. 30.
> Provision of contract between Hunt and the Stadium Authority requiring the action:  § 2.4.11.3.  "[I]mmediately notify the involved Contractor, if the Construction Manager observes any construction activity or practice it believes to be in violation of the safety program as set forth in the Contract Documents, OSHA, IOSHA or other applicable safety standards and order the Contractor to take all appropriate steps to correct the violation . . . ."  Appellants' App. 102-03.

> Action Garrett identifies as demonstrating Hunt's assumption of a legal duty of care for her safety:  Hunt exercised its authority to require contractors and subcontractors to initiate disciplinary procedures when safety policies and procedures were violated.  Appellee's Br. 31.
> Provision of contract between Hunt and the Stadium Authority requiring the action:  § 2.4.11.3 set forth above; § 2.4.11.4.  Notify the Stadium Authority and Architect in writing and recommend corrective action "if any Contractor fails to promptly correct such construction activity or practice or fails to coordinate its safety program with those of other Contractors."  Appellants' App. 103.

We have reviewed with some care each of the specific actions that Garrett identifies as demonstrating Hunt's assumption of a legal duty of care for her safety and have found each to fall within a contractual obligation established by Hunt's contract with the Stadium Authority. We have already established that the contract itself did not impose upon Hunt any legal duty of care for jobsite-employee safety.  Because Hunt did not undertake any jobsite-safety actions beyond those required by that contract, it did not assume by its actions any legal duty of care for jobsite-employee safety.

This contrasts with Plan-Tec, where the construction manager took on additional jobsite responsibilities beyond those established in its initial construction-management agreement and then took actions that raised an issue of fact as to whether it had assumed a legal duty of care for employee safety in that part of the project for which it undertook additional responsibilities.

13

Hunt did not assume a duty to Garrett through its actions or conduct.

## Conclusion

The judgment of the trial court is reversed, and the case is remanded for proceedings consistent with this opinion.

Shepard, C.J., and Rucker and David, JJ., concur.

Dickson, J., dissents, believing that the duty of care owed by the construction manager is a mixed question of fact and law, and that, under the facts of this case, material issues of fact exist that preclude summary judgment for either party.