# FOR PUBLICATION

ATTORNEYS FOR APPELLANTS:

**DAVID W. STONE IV**
Stone Law Office and & Legal Research
Anderson, Indiana

**JOHN P. NICHOLS**
Anderson & Nichols
Terre Haute, Indiana

ATTORNEYS FOR APPELLEE:

**JOSEPH M. LEONE**
**SEAN T. DEVENNEY**
Drewry Simmons Vornehm
Carmel, Indiana

**FILED**

Jan 22 2015, 9:53 am

**CLERK**
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| DANIEL LEE and HUI LUO LEE, | ) | |
| | ) | |
| Appellants-Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 49A04-1404-CT-175 |
| | ) | |
| | ) | |
| GDH, LLC, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Timothy W. Oakes, Judge
Cause No. 49D13-1107-CT-28569

**January 22, 2015**

**OPINION - FOR PUBLICATION**

**SHARPNACK, Senior Judge**

STATEMENT OF THE CASE

Daniel Lee, a plumber, was injured on the job at a construction site. He and his wife, Hui Luo Lee, sued several companies involved in the construction project, including GDH, LLC. The Lees appeal the trial court's grant of summary judgment in favor of GDH. We affirm.

ISSUE

The Lees raise one issue, which we restate as: whether the trial court erred in granting summary judgment to GDH.

FACTS AND PROCEDURAL HISTORY

In 2005, Ivy Tech Community College of Indiana contracted with GDH for GDH's services as a construction manager for a building project at Ivy Tech's campus in Logansport, Indiana. GDH agreed to manage the project "consistent with the best interests of [Ivy Tech]." Appellants' App. p. 62, Appellee's App. p. 21.

With respect to safety, Ivy Tech and GDH's contract states that before construction began, GDH would "provide recommendations and information to [Ivy Tech] regarding the allocation of responsibilities for safety programs among the contractors." Appellants' App. p. 63, Appellee's App. p. 22.

GDH further agreed in its contract with Ivy Tech that it:

> shall review the safety programs developed by each of the Contractors for purposes of coordinating the safety programs with those of the other Contractors. [GDH's] responsibilities for coordination of safety programs shall not extend to direct control over or charge of the acts or omissions of the Contractors, Subcontractors, agents or employees of the Contractors or Subcontractors, or any other persons performing portions of the Work and not directly employed by [GDH]. Should [GDH] become aware of a

2

contractor performing its work in an unsafe or hazardous manner, [GDH] shall take immediate steps to prevent such unsafe or hazardous work.

Appellants' App. p. 66, Appellee's App. p. 25. The contract further provides:

With respect to each Contractor's own Work, [GDH] shall not have control over or charge of and shall not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work of each of the Contractors, since these are solely the Contractor's responsibility under the Contract for Construction. [GDH] shall not be responsible for a Contractor's failure to carry out the Work in accordance with the respective Contract Documents unless [GDH] knows of any nonconforming work and does not stop or reject such work in accordance with the Contract Documents. [GDH] shall not have control over or charge of acts or omissions of the Contractors, Subcontractors, or their agents or employees, or any other persons performing portions of the Work not directly employed by [GDH]. Should a contractor fail to perform its work in a timely fashion as to non-conforming work known to [GDH], [GDH] shall immediately take all reasonable steps to mitigate any delays and damages to the Owner and other contractors.

Appellants' App. p. 66, Appellee's App. p. 25. During the construction phase, GDH's contract with Ivy Tech required GDH to "schedule and conduct regularly scheduled meetings at least once every two weeks to discuss matters such as procedures, progress, and scheduling." Appellants' App. p. 64, Appellee's App. p. 23. Ivy Tech and GDH's contract also states, "Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either [Ivy Tech] or [GDH]." Appellants' App. p. 73, Appellee's App. p. 32.

Ivy Tech separately contracted with other companies to perform specific portions of the construction project. One of these companies was Project Design & Piping, Inc. (PDP), Daniel's employer. PDP did not enter into a contract with GDH.

3

Ivy Tech's contract with PDP incorporated a "Project Manual." Appellants' App. p. 93, Appellee's App. p. 52. The Project Manual describes the scope of work for the entire Logansport project. It includes technical specifications, bidding requirements, regulations on the use of apprentices in construction projects, and general conditions of construction. The general conditions of construction state, in relevant part, "The Contract Documents shall not be construed to create a contractual relationship of any kind . . . between [GDH] and [PDP]." Appellee's App. p. 221.[1] The general conditions further provide:

> [PDP] shall supervise and direct the Work, using [PDP's] best skill and attention. [PDP] shall be solely responsible for and have control over construction means, methods, techniques, sequences and procedures and for coordinating all portions of the Work under this Contract, subject to overall coordination of [GDH].

Appellee's App. p. 227. Furthermore, "[PDP] shall not be relieved of obligations to perform the Work in accordance with the Contract Documents either by activities or duties of [GDH] or Architect in their administration of the Contract, or by tests, inspections, or approvals required or performed by persons other than [PDP]." *Id.*

With respect to safety, the general conditions of construction included in Ivy Tech's contract with PDP required PDP to submit its "safety program" prior to construction. Appellants' Appendix p. 203, Appellee's Appendix p. 228. The contract states that the Construction Manager (GDH) will be responsible for coordinating the activities of the contractors, but except for coordination duties,

---

[1] The copy of Ivy Tech's contract with PDP that is contained in the Appellants' Appendix omits this page of the general conditions of construction, as well as many other pages of the Project Manual. The copy of the contract contained in the Appellee's Appendix appears to be more complete.

> [GDH] . . . and Architect will not have control over or charge of and will not be responsible for construction means, methods, techniques, sequences or procedures, or for safety precautions and programs in connection with the Work, since these are solely [PDP's] responsibility . . . , and neither will be responsible for [PDP's] failure to carry out the Work in accordance with the Contract Documents.  Neither [GDH] nor the Architect will have control over or charge of or be responsible for acts or omissions of [PDP], Subcontractors, or their agents or employees, or of any other persons performing portions of the Work.

Appellants' App. p. 207, Appellee's App. p. 236.

In addition, Ivy Tech's contract with PDP indicates that GDH, as the construction manager, has the power to reject work that does not comply with project specifications, but

> neither . . . [GDH's] authority to act . . . nor a decision made . . . in good faith either to exercise or not to exercise such authority shall give rise to a duty or responsibility of . . . [GDH] to [PDP], Subcontractor, material and equipment suppliers, their agents or employees, or other persons performing any of the Work.

Appellee's App. p. 237.

Next, Ivy Tech's contract with PDP reiterates that PDP:

> shall be solely responsible for initiating, maintaining, and supervising all safety precautions and programs in connection with the performance of the Contract, and shall be in full compliance with all federal, state, and local safety and health related statutes, rules, and regulations.  [PDP] shall submit [its] safety program to [GDH] for review and coordination with the safety programs of other Contractors.

*Id.* at 257 (emphasis in original).

The Ivy Tech/PDP contract's general conditions of construction also provide that "[PDP] shall take every reasonable precaution for . . . employees on the Work and other

5

persons who may be affected thereby." Appellants' App. p. 218, Appellee's App. p. 258.

In addition:

> [PDP] shall give notices and comply with applicable laws, ordinances, rules, regulations and lawful orders of public authorities bearing on safety of persons or property or their protection from damages, injury or loss. In the event of conflict or inconsistency between the safety requirements provided or referenced within the Contract Documents and any federal, state, or local laws, rules, or regulations, the most stringent requirement shall govern the work.

Appellants' App. p. 218, Appellee's App. p. 258. PDP further agreed "to erect and maintain, as required by existing conditions and performance of the Contract, reasonable safeguards for safety and protection, including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent signs and utilities." Appellants' App. p. 218, Appellee's App. p. 258.

Ivy Tech's contract with PDP further emphasizes that "[PDP] shall be responsible for all safety precautions and requirements related to or arising out of its Work." Appellee's App. p. 259. To that end, the conditions of construction contained in the contract stated that PDP would be required to "designate a responsible member of [PDP's] organization at the site whose duty shall be the prevention of accidents." Appellants' App. p. 218, Appellee's App. p. 258.

The Ivy Tech/PDP contract also incorporated a "Summary of Work," whose terms include a requirement that "Each Contractor shall provide all safety devices/equipment for all items associated with its scope of work to perform the project safely." Appellee's App. p. 273. The Summary of Work also provides, "Contractors are responsible for all

6

safety requirements and are to provide and implement the safety program of their respective companies." *Id.* at 276.

In addition, the Project Manual that was incorporated into Ivy Tech's contract with PDP includes a section captioned "Project Safety and Work Rules." Appellants' App. p. 250, Appellee's App. p. 358. This section provides that the contractor would be required to adopt GDH's "Contractor Safety Compliance Program" and would be responsible for "implementing, monitoring, and reporting" as required by the Program. Appellee's App. p. 359. If, however, the contractor's own safety program contains requirements that exceed GDH's program, "the most stringent requirement shall take precedence." *Id.*

The Project Safety and Work Rules further state, "The responsibility for the 'Contractor Safety Compliance Program' remains solely with each Contractor. The Owner, Construction Manager, and Architect shall in no way have any responsibility for the Contractor safety program nor its implementation." Appellants' App. p. 251, Appellee's App. p. 360. In addition, "The Contractor and his employees shall be solely responsible for their compliance with OSHA and IOSHA rules and regulations. The Owner, Construction Manager, and Architect shall in no way have any responsibility to the Contractor nor his employees for compliance with OSHA or IOSHA rules and regulations." Appellants' App. p. 251, Appellee's App. p. 360.

GDH's Contractor Safety Compliance Program manual restates the requirements set forth elsewhere in Ivy Tech's contract with PDP. PDP was required to use the program "in conjunction with the Contractor's own safety program. If differences exist, the policy that provides the most protection will be used." Appellants' App. p. 253,

7

Appellee's App. p. 363. PDP was also required to submit its company's safety program to GDH before beginning work. Appellee's App. p. 365. Furthermore, "Accident prevention is the responsibility of each Contractor," who must "comply with all federal, state and local safety standards and regulations." Appellants' App. p. 253, Appellee's App. p. 363. The Contractor Safety Compliance Program manual also required PDP to hold weekly safety meetings with employees and send written minutes to GDH. Appellee's App. p. 364. Finally, the Program manual advised PDP: "Although [GDH] will verify the conditions onsite and Contractor compliance on a regular basis, it remains your responsibility to ensure compliance with this program, and any applicable laws/regulations." *Id.* at 380.

Northern Indiana Public Service Company (NIPSCO) provided natural gas for the building, including temporary heat during construction. On August 17, 2009, while Daniel was performing an air test to detect any leaks on a gas line, an explosion occurred and he was severely injured. The Lees sued GDH, NIPSCO, and The Hagerman Group.[2] Daniel alleged a claim in negligence, and Hui Luo alleged loss of consortium. NIPSCO and The Hagerman Group were dismissed from the action, leaving GDH as the sole defendant. GDH filed a motion for summary judgment, and the Lees filed a response. After a hearing, the trial court granted GDH's motion for summary judgment on all of the Lees' claims.

---

[2] The Hagerman Group appears to be related to GDH, but the record does not explain The Hagerman Group's role, if any, in this construction project.

The Lees filed a motion to correct error. The court held a hearing and denied the motion. In doing so, the court reaffirmed its grant of summary judgment to GDH and directed the entry of final judgment in favor of GDH. This appeal followed.

DISCUSSION AND DECISION

A party is entitled to summary judgment upon demonstrating the absence of any genuine issue of fact as to a determinative issue unless the nonmoving party comes forward with contrary evidence showing an issue of fact for trial. *Dugan v. Mittal Steel USA, Inc.*, 929 N.E.2d 184, 185-86 (Ind. 2010).

Our review on appeal from summary judgment is de novo. *Hughley v. State*, 15 N.E.3d 1000, 1003 (Ind. 2014). On appeal, our task is the same as the trial court's: to determine whether the moving party has shown from the designated evidentiary matter that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*; *see also* Ind. Trial Rule 56. We construe all facts and reasonable inferences in favor of the nonmoving party to ensure that it is not improperly denied its day in court. *Dugan*, 929 N.E.2d at 186. The appellant has the burden to persuade us that the trial court made the wrong decision. *Rosi v. Bus. Furniture Corp.*, 615 N.E.2d 431, 434 (Ind. 1993).

The Lees argue that the trial court erred in granting summary judgment on their negligence claim. To prove a negligence claim, a plaintiff must establish three elements, one of which is that the defendant owed a duty of care to the plaintiff. *Purcell v. Old Nat'l Bank*, 972 N.E.2d 835, 842 (Ind. 2012). Absent a duty, there can be no breach and no recovery in negligence. *Pfenning v. Lineman*, 947 N.E.2d 392, 398 (Ind. 2011). The

9

determination of whether a duty exists is generally an issue of law to be decided by the court. *Id.* In construction site cases there is no vicarious liability for the negligence of an independent contractor unless a duty of care has been assumed by contract or conduct. *Hunt Constr. Group, Inc. v. Garrett*, 964 N.E.2d 222, 225 (Ind. 2012).

The key issue is whether GDH, as the construction manager, owed a duty of care to Daniel, the employee of an independent contractor. *Hunt* is the leading case on this issue. In *Hunt*, Hunt was the construction manager for a stadium project. Garrett worked for a concrete contractor, Baker. Hunt and Baker had separate contracts with the project owner. Garrett was injured on the job and sued Hunt, alleging negligence. The trial court determined that Hunt could be held vicariously liable for Baker's actions or inactions.

On appeal, our Supreme Court held that when an independent contractor's employee alleges that a construction manager had a duty of care toward the employee, the court must first determine whether a contract to which the construction manager was a party imposed such a duty of care. *Id.* at 226 (citing *Plan-Tec, Inc. v. Wiggins*, 443 N.E.2d 1212 (Ind. Ct. App. 1983)). The Supreme Court reviewed Hunt's contract with the project's owner and noted the following clauses:

(1) Hunt's services were to be rendered solely for the benefit of the project owner, not for the contractors or other parties working on the project;

(2) Hunt accepted specific responsibilities "related to safety," but Hunt disclaimed responsibility for "the safety of all employees at the construction site," *id.* at 227;

10

(3) Hunt declined to assume the safety responsibilities of the independent contractors, and the contractors were explicitly responsible for their own safety plans and programs; and

(4) Hunt's responsibility to monitor and coordinate contractors' safety programs did not extend to direct control over the acts or omissions of any contractor or person not directly employed by Hunt.

Our Supreme Court further noted that Baker's contract with the project owner specifically stated that it was responsible for its own safety programs and plans. Based upon these considerations, the Court concluded that Hunt owed a contractual duty of care only to the project owner, not to employees such as Garrett. *Id.* at 228.

In the current case, Ivy Tech had separate contracts with GDH and PDP. GDH's contract strongly resembles the construction manager contract at issue in *Hunt*. GDH agreed to carry out its duties "consistent with the best interests of the Owner." Appellants' App. p. 62, Appellee's App. p. 21. In addition, the contract states that none of its provisions create "a contractual relationship with or a cause of action in favor of a third party against either [Ivy Tech or GDH]." Appellants' App. p. 73, Appellee's App. p. 32.

During the period before construction was to begin, GDH was contractually responsible to Ivy Tech for providing "recommendations and information to the Owner regarding the allocation of responsibilities for safety programs among the Contractors." Appellants' App. p. 63, Appellee's App. p. 22. During construction, GDH's safety responsibilities were limited to reviewing the contractors' safety programs and

11

coordinating them. Appellants' App. p. 66, Appellee's App. p. 25. GDH's contract with Ivy Tech provides that it would not have direct control over the acts or omissions of contractors, except that GDH was obligated to stop unsafe or hazardous work if it became aware of such work. Appellants' App. p. 66, Appellee's App. p. 25. In addition, the contract states that contractors would be "solely" responsible for "safety precautions and programs in connection with" their work according to the terms of their own contracts, and GDH would not be responsible for contractors' performance on safety issues. Appellants' App. p. 66, Appellee's App. p. 25.

Thus, as was the case in *Hunt*, GDH contractually disclaimed any responsibility for the safety of contractors' employees and specified that contractors would be responsible for administering safety programs in connection with their portions of the project.

In addition, PDP's separate contract with Ivy Tech, which incorporated by reference the Project Manual and its various subsections including general conditions of construction and project safety and work rules, reiterates that GDH would not have control over "safety precautions and programs . . . since these are solely [PDP's] responsibility . . . ." Appellants' App. p. 207, Appellee's App. p. 236. PDP's contract further states that PDP was solely responsible for safety precautions and programs, Appellee's App. at 257, and would "take every reasonable precaution for . . . employees on the Work and other persons who may be affected thereby." Appellants' App. p. 218, Appellee's App. p. 258. The project safety and work rules, which were also incorporated into PDP's contract, state:

[PDP] and his employees shall be solely responsible for their compliance with OSHA and IOSHA rules and regulations. [Ivy Tech], [GDH], and Architect shall in no way have any responsibility to [PDP] nor his employees for compliance with OSHA or IOSHA rules and regulations.

Appellants' App. p. 251, Appellee's App. p. 360. Finally, although PDP's contract with Ivy Tech required that PDP's safety program be at least as stringent as GDH's program, PDP remained solely responsible for safety with respect to its portion of the project. Appellants' App. p. 251, Appellee's App. p. 360.

The goal of contract interpretation is to ascertain and give effect to the parties' intent as reasonably manifested by the language of the agreement. *Reuille v. E.E. Brandenburger Constr., Inc.*, 888 N.E.2d 770, 771 (Ind. 2008). If the language is clear and unambiguous, it must be given its plain and ordinary meaning. *Id.* Based on the plain language of the contracts at issue, GDH did not contractually assume a duty of care for the employees of contractors. Rather, the contractors were responsible for the safety of their employees. *See Hunt*, 964 N.E.2d at 228.

The Lees argue that *Hunt* is distinguishable from this case because GDH's contract states that it shall stop a contractor from performing its work in an unsafe or hazardous manner if it "become[s] aware" of such work. Appellants' App. p. 66, Appellee's App. p. 25. GDH was required to react to safety problems when informed of them, which is not the same as promising to be responsible for safety at the construction site. The references to safety management in GDH's contract do not equate to assumption of a duty of care for contractors' employees. *See Plan-Tec*, 443 N.E.2d at 1219 (a construction manager's acceptance of extra contractual duties did not amount to

13

assumption of a duty of care where the manager expressly disavowed responsibility for ensuring the safety of contractors' employees).

The Lees also note that GDH was authorized under the contract with Ivy Tech to fire employees whose work was unsatisfactory and further had the right to approve or reject a contractor's choice of project superintendent. Appellants' App. pp. 203-04, Appellee's App. pp. 228-29. These provisions do not directly address safety issues. Instead, replacement of an employee or superintendent could be a matter of slow work or low-quality performance. These provisions, when contrasted with other contract provisions expressly relieving GDH of responsibility for a contractor's performance of safety programs, do not establish that GDH contractually assumed a duty toward Lee.

Our analysis is not yet at an end. The Lees claim that even if GDH did not contractually assume a duty of care for Daniel, GDH gratuitously assumed a duty of care through its actions in the course of managing the construction project. The *Hunt* Court stated that where a construction manager takes specific actions related to employee safety, there may be an issue of fact as to whether it assumed a legal duty of care. 964 N.E.2 at 226. Specifically, for a construction manager not otherwise obligated by a contract to provide jobsite safety to assume a legal duty of care for jobsite-employee safety, the manager must undertake specific supervisory responsibilities beyond those set forth in the original contract. *Id.* at 230.

The Lees argue that GDH undertook additional safety responsibilities because GDH required PDP to comply with its Contractor Safety Compliance Program. The record reveals that Ivy Tech, not GDH, required PDP to comply with GDH's program as

14

a condition of the contract between Ivy Tech and PDP. Appellants' Appendix p. 203, Appellee's Appendix pp. 228, 257, 355.

The Lees also point to a Health and Safety Policy developed by The Hagerman Group as proof of assumption of additional duties. Appellants' App. at 455-96. As is noted above, the record does not explain how The Hagerman Group was connected to the Logansport project. It is also unclear whether the Health and Safety Policy applied to PDP's work on this project. Anthony Suter, who was GDH's project superintendent at the time Lee's injury occurred, could not say whether he had seen the document before. There is no evidence that GDH adopted The Hagerman Group's Health and Safety Policy as its own or required anyone at the Ivy Tech construction site to implement it. Instead, Ivy Tech required PDP to comply with GDH's Contractor Safety Compliance Program.

Next, the Lees argue that GDH accepted additional responsibility for the safety of contractors' employees because GDH had the right to ask contractors to provide their programs on "lockout/tagout" procedures. GDH was contractually obligated to Ivy Tech to review contractors' safety programs. Appellants' App. p. 66, Appellee's App. p. 25. Requesting a copy of a safety program does not equate to assumption of an additional duty.

The Lees also argue that GDH's project manager, Kent Forman, stated that he was responsible for ensuring that all lockout/tagout procedures were followed. Actually, Forman stated that the responsibility rested with the "contractor doing the work" or the "project superintendent." Appellants' App. at 349, 354, 368. PDP, not GDH, was contractually responsible for providing a superintendent. *Id.* at 204.

15

Forman acknowledged that he would be responsible to correct a problem if he "heard" that "something was not being done." *Id.* at 368. He further stated that GDH "would typically" be sure lockout/tagout procedures were being followed. *Id.* at 354. He described the function as a "kind of review." *Id.* at 357A. This duty is in keeping with GDH's contractual obligation to fix unsafe conditions upon becoming aware of them, Appellants' App. p. 66, Appellee's App. p. 25, and does not amount to assumption of an additional duty of care.

Finally, the Lees argue that GDH assumed an additional duty of care for contractor's employees because GDH had a safety coordinator for the project and held weekly meetings with contractors on topics including safety. These tasks fall under GDH's contractual obligation to Ivy Tech to coordinate issues among contractors, *id.*, and do not indicate assumption of an additional duty of care. *See Hunt*, 964 N.E.2d at 231 (no assumption of an additional duty where the construction manager's activities during construction fell within contractual obligations).

CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

ROBB, J., and BARNES, J., concur.

16