In the

# United States Court of Appeals

## For the Seventh Circuit

No. 19-1533

VICTORIA JEFFORDS, as Administrator of
the Estate of DONALD JEFFORDS,

*Plaintiff-Appellant*,

*v.*

BP PRODUCTS NORTH AMERICA INC., *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:15-cv-00055-TLS — **Theresa L. Springmann**, *Judge.*

ARGUED DECEMBER 4, 2019 — DECIDED JUNE 29, 2020

Before FLAUM, RIPPLE, and HAMILTON, *Circuit Judges*.

HAMILTON, *Circuit Judge*. Donald Jeffords was a crane operator on a construction project at an oil refinery. One day at work he fell seven feet from the catwalk on the body of a crane and injured his feet and back. He sued the project owner and several of its contractors for negligence. While this lawsuit was pending, Jeffords died, apparently of unrelated causes, so

the suit is now being prosecuted by his widow, Victoria Jeffords, as his estate's administrator. The district court granted the defendants' motions for summary judgment, finding that none of the defendants whom Jeffords sued owed him a duty of care. We affirm.

I.  *Background*

The material facts are undisputed. Defendant BP Products North America owns and operates an oil refinery in Whiting, Indiana. As part of a large-scale modernization project at the refinery, BP contracted with defendant Fluor Constructors International to provide engineering, procurement, and construction management services. BP and Fluor each entered into separate contracts with defendant MC Industrial (MCI) to provide construction services. BP also contracted with Central Rent-a-Crane, Donald Jeffords's employer, to provide crane operation services. Central had no contractual relationship with Fluor or MCI, and Central is not a defendant because the workers' compensation system would apply to Jeffords's injuries on the job.

On May 4, 2013, Jeffords was walking on the catwalk of the crane he operated for Central and inspecting the crane's fluid levels. The catwalk was seven feet above the ground. It was only thirteen inches wide and lacked a guardrail. Jeffords lost his balance and fell onto the asphalt below. He fractured both feet, requiring surgery, and he injured his back.

Jeffords filed this lawsuit in state court, and defendants removed to federal court based on diversity of citizenship. Jeffords alleged negligence against BP, Fluor, and MCI. Jeffords died in 2015, survived by Victoria Jeffords and two daughters.

In August 2018, the district court granted BP and MCI's motions for summary judgment, 2018 WL 3819251 (Aug. 10, 2018); in February 2019, it granted Fluor's separate motion. 2019 WL 954818 (Feb. 27, 2019). Both orders held in relevant part that none of these defendants owed Jeffords a duty of care. The district court entered a final judgment for the defendants, and this appeal followed. We have jurisdiction under 28 U.S.C. § 1291.

II. *Analysis*

We review *de novo* the district court's grants of summary judgment. *Lewitton v. ITA Software, Inc.*, 585 F.3d 377, 379 (7th Cir. 2009). Summary judgment is appropriate when there are no genuine disputes of material fact and the moving parties are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Questions of interpretation of written contracts, on which this case hinges, are often well-suited for summary judgment. *Lewitton*, 585 F.3d at 379.

We apply Indiana substantive law to this suit, see *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938), because neither side disputes that it applies. *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426–27 (7th Cir. 1991). Under Indiana law, a plaintiff asserting a negligence claim must prove that the defendant owed him a duty and breached that duty in a way that caused injury to the plaintiff. *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind. 2004). "The duty, when found to exist, is the duty to exercise reasonable care under the circumstances." *Stump v. Indiana Equipment Co.*, 601 N.E.2d 398, 402 (Ind. App. 1992). "Absent a duty, there can be no breach of duty and thus no negligence or liability based upon the breach." *Peters*, 804 N.E.2d at 738. As a matter of federal procedure, see *Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 537 (1958), whether a duty exists is a

question of law determined by the court. *Dunn v. Menard, Inc.*, 880 F.3d 899, 906 (7th Cir. 2018).

It is a "general common law notion" that control equals responsibility. *Stropes ex rel. Taylor v. Heritage House Children's Ctr. of Shelbyville, Inc.*, 547 N.E.2d 244, 252 (Ind. 1989) (quotation marks and citation omitted). An employer, who controls working conditions, see *GKN Co. v. Magness*, 744 N.E.2d 397, 402–03 (Ind. 2001), must take reasonable care to provide its employees with a safe place to work, including safe equipment. *City of South Bend v. Estate of Rozwarski*, 404 N.E.2d 19, 21 (Ind. App. 1980), citing *Evansville & Terre Haute R.R. Co. v. Duel*, 33 N.E. 355 (Ind. 1892), among others. The principal of an independent contractor, who does not control the contractor's working conditions, see *Prest-O-Lite Co. v. Skeel*, 106 N.E. 365, 367 (Ind. 1914), ordinarily owes the contractor's employees no similar duty. *Ryan v. TCI Architects/Engineers/Contractors, Inc.*, 72 N.E.3d 908, 913 (Ind. 2017), citing *Prest-O-Lite*, 106 N.E. at 367, and *Stumpf v. Hagerman Construction Corp.*, 863 N.E.2d 871, 876 (Ind. App. 2007), among others.

The principal may, however, assume by contract a "specific" nondelegable duty of care toward its contractor's employees. *Ryan*, 72 N.E.3d at 913, quoting *Bagley v. Insight Commc'ns Co.*, 658 N.E.2d 584, 586 (Ind. 1995). Similarly, the construction manager of a construction project, even if it is not itself the principal of any contractor, may assume an otherwise nonexistent duty to provide a reasonably safe jobsite either by contract or "gratuitously or voluntarily" by its conduct. *Hunt Construction Group, Inc. v. Garrett*, 964 N.E.2d 222, 226–27, 229 (Ind. 2012); see generally *id.* at 224–25 (describing construction management).

In this case, the estate maintains that each defendant assumed a duty of care toward Jeffords on one or more of the theories above. Each of the estate's arguments is defeated by the undisputed material facts and contractual provisions in the record, and by the limits of the relevant Indiana Supreme Court cases.

### A. *Per Se Duty of General Contractor or Construction Manager*

First, the estate argues that BP, MCI, and Fluor all may be characterized as general contractors or construction managers and that all therefore assumed duties of care toward Jeffords. Even assuming the dubious premise, the conclusion is incorrect. As the district court explained, in *Ryan* and *Hunt* the Indiana Supreme Court held respectively that general contractors and construction managers "*can* owe duties to the employees of their independent contractors," not that they "*always* owe duties to the employees of their independent contractors." Whether a duty exists depends "solely" on the language of the relevant contracts. *Ryan*, 72 N.E.3d at 914.

### B. *MCI's Duty Toward Subcontractors' Employees*

Second, the estate argues that, because MCI was contractually charged by Fluor with responsibility for the safety of its subcontractors' employees, MCI owed Jeffords a duty of care. See Fluor-MCI contract § 6.02 ("Contractor will be directly responsible for subcontractor safety and performance while on Site."). But Central, Jeffords's employer, was not MCI's subcontractor; its only contractual relationship—at least the only one appearing in the record—was with BP. MCI therefore owed no duty of care to Jeffords under this provision of its contract with Fluor.

C. *Duty to Comply and to Monitor Compliance with Safety Standards*

Third, the estate argues that, because BP, Fluor, and MCI were each contractually required to comply with certain public and private safety standards and to monitor others' compliance with them as well, the contracts imposed on each of them duties of care toward Jeffords. We disagree.

*Ryan* held that a general contractor on a construction project had assumed a duty of care toward all onsite workers based on four features of its contract with the project owner. First, there was an "explicit assumption of responsibility for safety" by the general contractor. 72 N.E.3d at 915. Second, there was a "demonstrate[d] … intent to control" the subcontractors' work. *Id.* Third and fourth, playing supporting roles, there was a "general recognition" of the importance of workplace safety by the general contractor and a requirement that the general contractor designate a safety representative "to prevent accidents." *Id.*

By contrast, *Hunt* held that a construction manager had not assumed a duty of care toward all onsite workers by its contract with the project owner. First, the contract contained no language imposing on the construction manager "any specific legal duty to or responsibility for the safety of all employees at the construction site," though it did assume a duty to "review and monitor contractors' safety programs." 964 N.E.2d at 227. Second, the contract provided that the construction manager's performance under the contract was for the benefit of the project owner and no one else. *Id.* Third, the contract provided that the construction manager would not have "direct control over or charge of the acts or omissions" of any contractor. *Id.*

As in *Hunt*, the contracts in this case do not contain language imposing on any defendant a specific legal duty toward, or expressly assigning responsibility for the safety of, Central's employees. See *Hunt*, 964 N.E.2d at 227 (distinguishing three cases involving direction to take "reasonable" or "necessary precautions" for employee safety); compare Fluor-MCI contract § 6.02 ("Contractor will be directly responsible for subcontractor safety and performance while on Site."). And unlike *Ryan*, where a duty was found, no language in these contracts charges any defendant to "at all times exercise complete and exclusive control" over Central's working conditions. 72 N.E.3d at 915; see also *Hunt*, 964 N.E.2d at 228, distinguishing *Perryman v. Huber, Hunt & Nichols, Inc.*, 628 N.E.2d 1240, 1242 (Ind. App. 1994), where "construction manager had exclusive authority to direct and control work on the entire project."

The contractual compliance and monitoring requirements imposed on or by BP, Fluor, and MCI do not distinguish this case from *Hunt*, where materially identical provisions did not overcome the contract's failure to assign responsibility for and control over jobsite safety to the construction manager. See 964 N.E.2d at 227 n.6, incorporating *Hunt Construction Group, Inc. v. Garrett*, 938 N.E.2d 794, 801–02 (Ind. App. 2010); see also *Merritt v. Bethlehem Steel Corp.*, 875 F.2d 603, 607 (7th Cir. 1989) (applying Indiana law) (a duty is not assumed "merely because [defendant] may have a right to inspect and test the work, approve of the work and/or employees of the independent contractor or require the contractor to follow company safety rules").

The closest the estate comes to avoiding *Hunt* and satisfying *Ryan* is to point to the following provision in the contract between BP and Fluor:

> Contractor [Fluor] shall take all reasonable precautions, including those related to sanitation and health for the safety of its personnel and the personnel of others, to protect all Work done and all materials furnished under the Contract … from loss or damage by the processes of construction, by the action of the elements or by any other cause or causes.

Notably, although the contract between Fluor and MCI imposes a textually identical obligation on MCI, the first time the estate cited it was in opposition to Fluor's later-filed summary judgment motion—after the district court had already pointed it out in granting BP and MCI's earlier-filed motions.

In any event, on the merits it is clear that this provision was written to protect property, not people. It protected "all materials furnished" and "all Work done," where "Work" is defined as "the engineering, procurement, fabrication management, construction, [and] construction management services to be performed under this Contract." If there were any doubt, it would be dispelled by a separate provision of the contract that "Contractor shall not be responsible for construction means, methods, techniques, procedures, or safety precautions of … Company's Third Party contractors … ." See *Ryan*, 72 N.E.3d at 914 ("We look at the contract as a whole"). The district court correctly granted summary judgment based on the contracts in this case.

D.  *Duty to Comply with OSHA Regulations*

Fourth, the estate suggested in its brief, and contended more forcefully at oral argument, that Jeffords's injuries were proximately caused by the defendants' failure to comply with regulations promulgated under the Occupational Safety and Health Act (OSHA), 29 U.S.C. § 651 et seq., in breach of their contractual promises to do so. But OSHA regulations cannot "be used to expand or otherwise affect [a defendant's] common law duties or liabilities under a negligence per se theory, or as evidence of an expanded standard of care." *Merritt v. Bethlehem Steel Corp.*, 875 F.2d 603, 608 (7th Cir. 1989), citing 29 U.S.C. § 653(b)(4) (federal act); Ind. Code § 22–8–1.1–48.3 (state analogue); *Hebel v. Conrail, Inc.*, 475 N.E.2d 652, 658 (Ind. 1985).

Without any power to create or expand duties in tort, the defendants' contractual duties to comply with OSHA regulations must remain just that: contractual promises that cannot be enforced by anyone not a party to them, in privity with a party to them, or an intended beneficiary of them. *OEC-Diasonics, Inc. v. Major*, 674 N.E.2d 1312, 1314–15 (Ind. 1996). Jeffords was not a party or in privity with a party to any of the defendants' contracts, and the estate does not appeal the district court's sound conclusion that he was not a third-party beneficiary of them.

E.  *Gratuitous Assumption of Duty by Conduct*

Fifth, the estate argues that BP, Fluor, and MCI each assumed duties of care toward Jeffords by their conduct. To assume gratuitously by conduct a duty not otherwise imposed, *Hunt* held, a construction manager "must undertake specific

supervisory responsibilities beyond those set forth in the original construction documents." 964 N.E.2d at 230. The plaintiff in *Hunt* pointed to no act undertaken by the construction manager that its contract with the project owner did not already require it to perform, so no gratuitous assumption had been shown. *Id.* at 231.

In this case, the estate points to no specific responsibility undertaken by any defendant that its contracts did not require it to perform. As the district court observed, the estate pointed only to contractual obligations it thought defendants "*did not* perform." The estate's argument is self-defeating.

F.  *Principals' Vicarious Liability*

Sixth and finally, the estate argues that, because Fluor, MCI, and Central were BP's agents, BP is vicariously liable for their negligence. Because we have concluded that neither Fluor nor MCI owed Jeffords a duty of care, there can be no negligence on their part for which to hold BP vicariously liable. *Peters v. Foster*, 804 N.E.2d 736, 738 (Ind. 2004). Even as to Central, the estate's conclusion is incorrect. Principals are vicariously liable for the torts of their employees committed in the scope of employment, but not every agent is an employee. Some are independent contractors, for whose negligence the principal is usually not liable. See generally *Sword v. NKC Hospitals, Inc.*, 714 N.E.2d 142, 147–48 & n.5 (Ind. 1999).

The estate's contrary assertion rests on stray dicta from 1957 distinguishing imprecisely between "agents" and "independent contractors," rather than more precisely between "servants" or "employees" on one hand and independent contractors on the other. See *Western Adjustment & Inspection Co. v. Gross Income Tax Div.*, 142 N.E.2d 630, 648–49 (Ind. 1957).

There is of course no contention here that Fluor, MCI, or Central were BP's employees.

Plaintiff's claims are defeated by unambiguous contractual provisions. The district court correctly held as a matter of law that none of these defendants owed Jeffords a duty of care. Its judgment is therefore

AFFIRMED.